JUDGE ENGELMAYER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV 0275

AL MAYA TRADING ESTABLISHMENT,

Petitioner,

v.

GLOBAL EXPORT MARKETING CO., LTD.,

Respondent.

CASE NO. _____

**PETITION FOR AN ORDER DIRECTING ARBITRATION AND APPOINTING AN ARBITRATOR, OR, IN THE ALTERNATIVE, FOR OTHER RELIEF**



RECEIVED
JAN 14 2014
U.S.D.C. S.D. N.Y.
CASHIERS

Mitchell A. Karlan
   mkarlan@gibsondunn.com
Akiva Shapiro
   ashapiro@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212-351-3905
Facsimile: 212-351-4035

*Attorneys for Petitioner*
AL MAYA TRADING
ESTABLISHMENT

Al Maya Trading Establishment ("Al Maya"), through its undersigned counsel, allege upon knowledge as to Petitioner, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Petitioner Al Maya entered into a written agreement with Respondent Global Export Marketing Co. Ltd. ("Gemco"), dated June 16, 1999 (the "Agency Agreement" or "Agreement"), whereby Gemco appointed Al Maya as its exclusive distributor in the United Arab Emirates for Gemco's American Garden branded products. *See* Ex. A.[1] This Agreement formalized the relationship between Al Maya and Gemco that had already existed for approximately 10 years.  Thus, Al Maya and Gemco have worked together for the past 25 years, with Al Maya acting as Gemco's exclusive distributor for Gemco's American Garden products in the UAE during that entire period.

2.      In accordance with Article 9 of the Agreement, the parties agreed to submit all disputes relating to the Agreement, including breach of contract claims, to binding arbitration. Specifically, Article 9 of the Agency Agreement (the "Arbitration Provision") provides: "All disputes and or differences that may arise between the parties hereto out of or in relation to or in connection with this agreement or for any breach thereof shall be settled through arbitration by a practicing Auditor or Lawyer in internationally reputed Audit / law firm in accordance with the rules and regulations obtaining in the United Arab Emirates and the award given by the arbitrator shall be final and binding on both the parties."

3.      Despite the parties' 25-year long relationship, the Agreement's automatically renewing 2-year term—which most recently renewed in June 2013—and Al Maya's performance of its obligations under the Agreement, Gemco has now purported to unilaterally terminate the

---

[1]  All references in this Petition to "Exhibit __" or "Ex. __" are to the exhibits to the Declaration of Mitchell A. Karlan, dated January 8, 2014, submitted herewith in support of the Petition.

Agreement and the parties' longstanding business relationship; has entered into a distributorship agreement with a competing distributor for the UAE region; has refused to honor its contractual obligation to supply Al Maya with American Garden products; has purported to prohibit Al Maya from marketing and selling American Garden products in the UAE; has informed Al Maya's customers that Al Maya is no longer the exclusive distributor of American Garden products in the UAE and encouraged them to sever their relationships with Al Maya; and has actively sold American Garden products to a distributor other than Al Maya for sale, distribution or passage in or through the UAE.  These actions constitute numerous, flagrant and material breaches of Gemco's obligations under the Agency Agreement—along with independent business torts—which have resulted in millions of dollars of damages to Al Maya.

4.      In response to Al Maya's good faith efforts to privately resolve the dispute, or at the very least to have its claims heard by a binding arbitrator in accordance with Article 9 of the Agreement, Gemco claimed that it "never signed" the Agreement and that the Agreement has "never existed."  Ex. B.  As a result, in accordance with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, Al Maya served Gemco with a Notice of Application for an Order Compelling Arbitration, which provided Gemco with a final opportunity to remedy and rescind its failure, neglect, and refusal to arbitrate in accordance with the terms of the Agreement.  *See* Ex. C. Gemco has instead continued to refuse to arbitrate the parties' dispute.

5.      Accordingly, Al Maya brings this action under the FAA (a) for an "order directing" Gemco to arbitrate Al Maya's claims in "the district in which the petition for an order directing such arbitration is filed," 9 U.S.C. § 4—the Southern District of New York—because those claims "arise between the parties [to the Agreement] out of or in relation to or in connection with this [A]greement or for any breach thereof," Ex. A, Art. 9, and thus fall squarely within the Arbitration Provision; and (b) for an order designating and appointing a single arbitrator who is "a practicing Auditor or Lawyer in internationally reputed Audit / law firm," Ex.

2

A, Art. 9, in accordance with the terms of the Agreement, because "no method [is] provided" in the Arbitration Provision for such designation or appointment, 9 U.S.C. § 5.

6.      In the alternative, if the Court declines to order arbitration, Al Maya seeks a judgment against Gemco on Al Maya's breach of contract and tort claims, together with an award of damages in an amount to be determined at trial, but reasonable believed to be not less than $50 million.

## PARTIES

7.      Al Maya is a United Arab Emirates ("UAE") company with its headquarters and principal place of business in Dubai, UAE.  Al Maya specializes in the food trade, with a focus on food distribution and retail.  It is a leading food distributor and retailer in the UAE region, with a strong reputation that it has established over the course of approximately 30 years.  Al Maya has over 30 supermarkets and one of the largest distribution facilities in the UAE.

8.      Respondent Global Export Marketing Co., Ltd. ("Gemco") is an active New York domestic business corporation (NYS Dep't of State ID # 1304913) with its headquarters and principal place of business at 25 West 31st Street, 8th floor, New York, NY 10001.  Gemco exports U.S. food products abroad under the "American Garden" brand—including ketchup, mayonnaise, soy sauce, and peanut butter—and other brands.

## JURISDICTION

9.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because this controversy is between the citizen of a State (Respondent) and the citizen or subject of a foreign State (Petitioner), and the amount in controversy exceeds $75,000.

10.      This Court also has subject matter jurisdiction under 9 U.S.C § 4 because Petitioner is a party aggrieved by the failure, neglect, or refusal of Respondent to arbitrate under a written agreement for arbitration and this Court would, save for such agreement, have jurisdiction under title 28, in a civil action, of the subject matter of a suit arising out of the controversy between the parties.

11.     In addition, under 28 U.S.C. § 1367(a), the Court has supplemental jurisdiction over any claims based on state law.

12.     The court has personal jurisdiction over Respondent in this district under 28 U.S.C. § 1332(c)(1) because Respondent is a New York corporation with a headquarters and principal place of business in this district.

## VENUE

13.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1) and (b)(3) because Respondent resides within the State of New York and within the Southern District of New York.

14.     Venue is also proper under 29 U.S.C. § 1451(d) because Respondent does business in the district.

15.     In addition, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Petitioner's claims occurred in the Southern District of New York—namely, Gemco's performance under, and breaches of, the contract, and Gemco's refusal to arbitrate the parties' dispute.

16.     Finally, venue is proper under 9 U.S.C. § 4, because 9 U.S.C. § 4 permits any "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to "petition any United States district court" for an order directing that arbitration proceed, in the manner provided for in such agreement, in "the district in which the petition for an order directing such arbitration is filed."

## STATUTORY FRAMEWORK

17.     Section 2 of the FAA, 9 U.S.C. § 2 provides, in relevant part, that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

4

18.     Section 4 of the FAA, 9 U.S.C. § 4, provides, in relevant part, that: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

19.     Section 4 of the FAA, 9 U.S.C. § 4, also provides that five days' notice in writing of such application shall be served upon the party in default.

20.     Finally, Section 4 of the FAA, 9 U.S.C. § 4, provides, in relevant part, that: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," *i.e.*, that there is no genuine issue of material fact as to the making of the agreement to arbitrate or the failure to comply therewith (*see, e.g.*, *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987)), the court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

21.     Section 5 of the FAA, 9 U.S.C. § 5, provides, in relevant part, that: "If in the agreement provision . . . no method be provided therein [for the naming or appointing of an arbitrator or arbitrators], . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]"

22.     Section 6 of the FAA, 9 U.S.C. § 6, provides, in relevant part, that: "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." Accordingly, should Respondent seek to oppose the instant Petition, it may not file an answer, and must instead do so in the manner provided under the Federal and Local Rules for opposing a motion.

*See ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 112 (2d Cir. 2012). This special procedure exists in order to ensure that "petitions to compel arbitration . . . receive a 'summary and speedy disposition.'" *Id.* at 114 (quoting *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983)).

## FACTUAL ALLEGATIONS

### Al Maya and Gemco Enter Into Exclusive Distributorship Agreement, Formalizing the Relationship that had Already Existed Between the Parties for a Decade

23.     On June 16, 1999, Al Maya and Gemco entered into the Agency Agreement, formally appointing Al Maya as the exclusive distributor in the United Arab Emirates for Gemco's American Garden branded products. This Agreement formalized the relationship between Al Maya and Gemco that had already existed for approximately 10 years. Thus, Al Maya and Gemco have worked together for the past 25 years, with Al Maya acting as Gemco's exclusive distributor for Gemco's American Garden products in the UAE during that entire period.

24.     Article 2 of the Agency Agreement provides that Gemco appoints Al Maya as its "Sole Agent / Exclusive Distributor" for American Garden products in the "entire territory of UAE." The UAE is defined as the "designated territory."

25.     Article 4 of the Agreement prohibits Gemco from selling American Garden products in the UAE through any other distributor. Specifically, Article 4 states that Gemco "shall not directly sell the 'Merchandise' to the 'designated territory' through any channels except" Al Maya.

26.     Pursuant to Article 5, Al Maya agrees to promote sales of American Garden products in the UAE and to organize necessary advertisements and promotions.

27.     Article 6 directs that Gemco "shall supply" American Garden products to Al Maya.

28.     According to its terms, the Agency Agreement had an initial term of two years, with automatic renewal at the end of each term. Specifically, Article 8 of the Agreement

provides that it "shall remain valid for a period of two (2) years" and shall "automatically [be] renewed for equal period(s)" unless either party provides three months' advance written notice of termination.

29.     Since the Agreement was signed on June 16, 1999, it has automatically renewed every two years for the last 14 years.  The Agreement most recently renewed automatically on June 16, 2013, and will be valid until June 15, 2015.

### The Agency Agreement Contains a Broad Arbitration Provision

30.     Pursuant to Article 9 of the Agency Agreement, the parties agreed to submit any and all disputes arising out of or in connection with the Agreement to arbitration.

31.     Specifically, Article 9 of the Agency Agreement provides:

> All disputes and or differences that may arise between the parties hereto out of or in relation to or in connection with this agreement or for any breach thereof shall be settled through arbitration by a practicing Auditor or Lawyer in internationally reputed Audit / law firm in accordance with the rules and regulations obtaining in the United Arab Emirates and the award given by the arbitrator shall be final and binding on both the parties.

32.     The Arbitration Provision does not contain a venue provision.  Accordingly, should this Court issue an order compelling arbitration of the parties' dispute, it must order that the arbitration be conducted in the Southern District of New York.  *See* 9 U.S.C. § 4 (arbitration ordered by the district court in accordance with FAA Section 4 "shall be within the district in which the petition for an order directing such arbitration is filed"); *Clarendon Nat'l Ins. Co. v. Lan*, 152 F. Supp. 2d 506, 523 (S.D.N.Y. 2001) ("[I]f an agreement to arbitrate does not specify the location of the arbitration, a court may only order that the arbitration be conducted in its own district.").[2]

---

2  The Arbitration Provision does, however, state that the parties' arbitration will be conducted in accordance with the procedural "rules and regulations obtaining in the United Arab Emirates" for arbitrations, *i.e.*, the Rules of the Dubai International Arbitration Centre ("DIAC").  Accordingly, should the Court grant Petitioners' request for an order compelling

[Footnote continued on next page]

**Al Maya Performs its Contractual Obligations Toward Gemco for 14 Years**

33.     Over the past 14 years, Al Maya has diligently performed its contractual obligations toward Gemco.  Al Maya has promoted Gemco's American Garden products in the UAE; invested in infrastructure for the shipment and distribution of these products; hired a sales force devoted entirely to Gemco's products; and significantly developed the reputation of the American Garden brand in the region.

34.     As a result of Al Maya's efforts and significant investment in the American Garden brand, sales of Gemco's American Garden products distributed by Al Maya have grown steadily since 1999, reaching approximately $27 million in 2012.  Sales figures were expected to continue to increase, reaching projected sales of $38 million in 2015.  In addition, Al Maya serves as the U.A.E. distributor for other Gemco brands; Al Maya sales of those brands totaled $9 million in 2012, and were projected to reach $11 million in 2015.

35.     In recognition of Al Maya's efforts and success, in 2008 Gemco awarded Al Maya for its "Continuous Outstanding Partnership of 2 Decades."  Gemco subsequently awarded Al Maya its "Distributor of the Year" award.

**Gemco Unilaterally Cancels the Agreement, Refuses to Fulfill its Contractual Obligations, Enters into a New Agreement with a Competitor Distributor, and Sends Letter to Al Maya's Customers Encouraging Them to End Their Longstanding Relationships with Al Maya**

36.     In contrast to Al Maya's award-winning conduct, Gemco has repeatedly breached its obligations under the Agency Agreement in a number of material respects, resulting in

---

[Footnote continued from previous page]

arbitration, it may instruct the arbitrator, located within the Southern District, to conduct the arbitration in accordance with the DIAC's procedural rules, but may not order arbitration or appoint an arbitrator outside the Southern District.  *Cf. Oil Basins, Ltd. v. Broken Hill Proprietary Co.*, 613 F. Supp. 483, 488–89 (S.D.N.Y. 1985) (rejecting contention that the venue for arbitration should be the site of the law that was to be applied, in the absence of a choice-of-<u>venue</u> provision, since "the choice of law clause indicates . . . that the parties came to an agreement concerning rules for determining choice of law, but did not do so with respect to the place of arbitration").

millions of dollars of damages to Al Maya. Specifically, Gemco purported to terminate the parties' relationship despite the validity of the parties' binding contract; Gemco purported to change distributors for the UAE region, and informed its customers of that change, despite its contractual obligation to rely on Al Maya as its "Exclusive Distributors"; Gemco refused to honor its contractual obligation to supply Al Maya with American Garden products; Gemco sought to prohibit Al Maya from marketing and selling American Garden products, despite its contractual right to do so; and Gemco actively sold its American Garden products to a distributor other than Al Maya for sale, distribution or passage in or through the UAE.

37.    Al Maya places monthly orders with Gemco for American Garden products. Gemco has failed to confirm or fulfill some of the recent orders placed. In failing to supply Al Maya with American Garden products that it has ordered, Gemco breached Article 6 of the Agreement, which expressly provides that Gemco "shall supply" these products to Al Maya.

38.    At the end of September 2013, Gemco again breached the parties' Agreement by purporting to unilaterally terminate the parties' commercial relationship, despite the fact that the Agreement remains in full force and effect until June 15, 2015. Following a meeting between the two parties, Gemco's Chief Executive Officer, Kevin Egan, informed Al Maya in an email message dated September 28, 2013 that Gemco's decision to terminate the relationship "was final" and that the decision applied to "all brands." *See* Ex. D.

39.    Shortly thereafter, on October 2, 2013, Gemco's Biju Panicker informed Al Maya that Gemco's "new distributors" would start selling American Garden products in the UAE on October 25. *See* Ex. E. By providing American Garden products to another distributor for sale in the UAE, Gemco breached Article 4 of the parties' Agency Agreement, which prohibits Gemco from directly selling its American Garden products in the region through any channel other than Al Maya.

40.    On October 6, Mr. Egan sent a written notice to Al Maya purporting to terminate "all" the parties' "verbal and written agreements" (notwithstanding that the Agency Agreement

9

remains in full force and effect) and to forbid Al Maya from "marketing, selling of using [the American Garden] brand in anyway [sic]." *See* Ex. F. By purporting to prohibit Al Maya from marketing or selling American Garden products, Gemco breached Article 5 of the Agency Agreement, which expressly provides that Al Maya will promote sales of Gemco's products. Mr. Egan also informed Al Maya that Gemco would "no longer supply" it with American Garden products. *Id.* In refusing to supply Al Maya with American Garden products, Gemco breached Article 6 of the Agreement, which expressly provides that Gemco "shall supply" these products to Al Maya.

41.     The following week, on October 8, 2013, Gemco encouraged its customers to terminate the contracts, agreements and relationships they had with Al Maya with respect to the American Garden brand by sending a letter to its customers in the UAE notifying them of Gemco's "change in supplier" in the UAE (the "October 8 Letter"). The October 8 Letter stated that the new "authorized distributor shall be National Trading & Developing Establishment"; represented that this purported new authorized distributed was already "presently servicing [the customer's] account"; and instructed Gemco's customers to "place all of your orders" through this purported new authorized distributor. *See* Ex. G.

42.     The October  8 Letter compounded each of the breaches of the Agreement noted above.

43.     This communication with Al Maya customers and the broader business community in the UAE also interferes with Al Maya's longstanding, ongoing, and valuable contracts and business relationships, and has caused (and continues to cause) significant, needless, and irreparable damage to Al Maya's reputation. Because each transmittal of the October 8 Letter to a different recipient with whom Al Maya had contractual relationships or business relations constitutes an independent tort, Gemco's transmittal of this communication both breached the Agreement and constituted numerous independent tortious acts.

44.     Gemco has also failed to pay outstanding invoices owed to Al Maya, which are currently approximately $1.17 million.

45.     In addition to its recent breaches of the parties' Agreement, Gemco has also violated the Sole Agent and Exclusive Distributor provisions of the Agreement for many years by actively selling its American Garden products to a distributor other than Al Maya for sale, distribution or passage in or through the UAE.

### Gemco Fails To Remedy its Material Breaches of Contract and Refuses To Arbitrate Under the Parties' Agreement

46.     On October 9, Al Maya sent a letter to Mr. Egan informing him of Gemco's multiple breaches of the Agreement and requesting, *inter alia*, that Gemco "respond to [Al Maya] within 7 days from receipt of this legal notice" confirming that Gemco would: continue to supply American Garden merchandise "exclusively to Al Maya"; fulfill pending orders; settle outstanding invoices; inform customers in the UAE that Al Maya is the "exclusive agent" for American Garden products; prevent its representatives in Dubai from selling and marketing American Garden products to other retailers; and otherwise "immediately adhere with the [parties'] contractual arrangement. *See* Ex. H.

47.     In response, Gemco sent a letter dated October 15 denying that Gemco had signed "any valid exclusive distributorship with [Al Maya]," and asserting that Gemco "will continue to supply to whoever we chose to supply as part of our business interests and requirements." *See* Ex. I. Gemco also stated that, despite the outstanding July and August 2013 orders, it "will not supply any product to [Al Maya] going forward" because it considers the parties' relationship "terminated." *Id.* Gemco did, however, commit to paying Al Maya for expenses incurred through September 30, 2013, so long as they were previously "approved in writing by [Gemco]." *Id.*

48.     On October 31, Al Maya's representatives at Gibson Dunn & Crutcher LLP sent a final breach notice letter to Gemco's counsel, reiterating Gemco's multiple breaches of the Agreement and requesting, *inter alia*, that Gemco immediately cease supplying American Garden

branded products to companies other than Al Maya that purchase, distribute, or transship American Garden products within or through the U.A.E.; immediately recommence supplying American Garden products to Al Maya; and immediately pay damages to Al Maya resulting from Gemco's breaches of the Agreement, as well as the amounts owed for unpaid invoices. *See* Ex. J.

49.     The October 31 letter also notified Gemco that if it did not "immediately cure its breaches of the Agreement and pay damages to Al Maya," Al Maya reserved its right to seek forward-looking damages for lost profits and other costs through the expiration of the Agreement in June 2015, in an amount anticipated to exceed $50 million. *Id.* The October 31 letter also stated that if Gemco did not commit in writing by November 2 "that it will cure its breaches of contract and make Al Maya whole by immediately taking the steps set forth [in the letter]," Al Maya would "have no choice but to commence appropriate legal action against Gemco." *Id.*

50.     In response, in a letter dated November 12, 2013, Gemco's representatives at ST&P Attorneys and Agents stated that the Agreement "never existed," was "never signed" by Gemco, and is not "legal and binding" upon Gemco. *See* Ex. B.

51.     By refusing to accept the existence and binding nature of the Agreement itself, including, necessarily, the Arbitration Provision, Gemco has failed, neglected, and/or refused to arbitrate under the parties' written agreement for arbitration.

52.     On December 2, 2013, Al Maya's representatives responded to Gemco's November 12 letter, imploring Gemco's representative, "in a final effort to avoid litigation," to "arrange for your client's U.S. counsel to meet with us in New York within the next 14 days." *See* Ex. K. The letter also informed Gemco that a decision to forgo a meeting would likely result in litigation. *Id.*

53.     Gemco did not respond to Al Maya's December 2 letter.

54.     On January 2, 2014, Al Maya served Gemco with a Notice of Application for an Order Directing Arbitration (the "Notice"). *See* Ex. C (the Notice, together with an Affidavit of

Service thereof).  The Notice informed Gemco, *inter alia*, that "Al Maya intends to file an application with the United States District Court for the Southern District of New York for an order directing arbitration under 9 U.S.C. § 4 in no less than 5 days from the date of service on [Gemco] of this Notice of Application." *Id.* ¶ 2.

55.    The Notice noted that "[t]he parties and their counsel have now corresponded extensively regarding Gemco's conduct, during the course of which Gemco has made plain its refusal to abide by the agreement's terms, or even to accept the existence and binding nature of the Agreement itself, including, necessarily, the Arbitration Provision.  Accordingly, Gemco has failed, neglected, and/or refused to arbitrate under the parties' written agreement for arbitration." *Id.* ¶ 7; *see also id.* ¶¶ 8–9.

56.    The Notice also attached a proposed Stipulation of Consent to Arbitration (the "Stipulation") for execution by Gemco, by which Al Maya provided Gemco with a final opportunity to remedy and rescind its failure, neglect, and/or refusal to arbitrate in accordance with the terms of the Agreement. *See id.* ¶ 11.  The Notice stated that "unless an original hard copy of the enclosed Stipulation of Consent to Arbitration, executed by a representative of Gemco with power to bind Gemco thereto, is received by Al Maya's counsel . . . within 5 days of the date of service of this Notice of Application on Gemco, Al Maya will file its application to the United States District Court for the Southern District of New York under 9 U.S.C. § 4 for an order directing Gemco to proceed to arbitration in accordance with the terms of the Agreement." *Id.* ¶ 11. The Notice also informed Gemco that "Gemco's failure to return the executed Stipulation of Consent to Arbitration will be deemed further evidence of Gemco's failure, neglect, or refusal to arbitrate under the Agreement." *Id.* ¶ 13.

57.    Although 5 days have passed since the date of service of the Notice, Gemco has not returned an executed copy of the Stipulation to Al Maya, nor has it otherwise responded to the Notice.

**Al Maya Has Suffered and Will Suffer Millions of Dollars in Damages
as a Result of Gemco's Breaches of Contract and Tortious Conduct**

58.     As a result of Gemco's tortious conduct and its multiple breaches of the Agency Agreement, including its purported unilateral termination of the Agreement approximately 21 months before the end of its term, and its failure to pay moneys owed Al Maya under the Agreement, Al Maya has suffered significant damages, including backward and forward-looking lost profits through the expiration of the Agreement on June 15, 2015, lost profits for non-shipment of orders placed by Al Maya, costs associated with Al Maya's ongoing American Garden-related shipping, shelf space, salary, and other obligations, payment for Al Maya's inventory of American Garden merchandise, harm to Al Maya's business and contractual relationships, lost profits resulting therefrom, reputational harm, lost profits resulting from Gemco's sales of its American Garden products for many years to a distributor other than Al Maya for sale, distribution or passage in or through the UAE, compensation for the moneys invested by Al Maya in the development of the American Garden brand, compensation for the increased, forward-looking value and profits of the American Garden brand resulting from Al Maya's investments therein, outstanding unpaid invoices, and interest expenses resulting therefrom.

59.     In addition, in apparent retaliation for Al Maya's assertion of its contractual rights with respect to American Garden brand products, Gemco has stopped supplying Al Maya with products from other brands that Al Maya had previously distributed for Gemco.  Al Maya has suffered additional damages as a direct and proximate result of this retaliatory conduct by Gemco.

**No Prior Application**

60.     No prior application has been made for the relief requested herein.

## FIRST CAUSE OF ACTION

### Under the FAA (9 U.S.C. § 4):  Order Compelling Arbitration

61.     Petitioner repeats and re-alleges each and every allegation set forth in paragraphs 1 through 60 as though fully set forth herein.

62.     Section 2 of the FAA, 9 U.S.C. § 2 provides, in relevant part, that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

63.     Section 4 of the FAA, 9 U.S.C. § 4, provides, in relevant part, that:  "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

64.     Section 4 of the FAA, 9 U.S.C. § 4, also provides that five days' notice in writing of such application shall be served upon the party in default.

65.     Upon received a petition to compel arbitration under 9 U.S.C. § 4, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

66.     Gemco and Al Maya entered into a valid and binding Agency Agreement, dated June 16, 1999, which contains a valid and binding Arbitration Provision. The Arbitration Provision expressly provides for "final and binding" arbitration of "all disputes and or differences" that may "arise between the parties out of or in relation to or in connection with" the Agreement.

67.    There is an existing controversy between the parties arising out of the Agreement and its Arbitration Provision.

68.    Agreements to arbitrate are interpreted broadly according to their terms. *See Concourse Village, Inc. v. Local 32E, Service Employees Int'l Union*, 822 F.2d 302, 304 (2d. Cir 1987) ("[U]nless it can be said 'with positive assurance that the arbitration clause is not susceptible of a plausible interpretation that covers the asserted dispute,' the dispute should be submitted to arbitration." (quoting *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960))).

69.    Al Maya's breach of contract and other claims relating to Gemco's unilateral termination of the Agreement, its other breaches of the Agreement, and its interference with Al Maya's contractual and business relationships in connection with Al Maya's rights as the exclusive distributor of American Garden branded products in the UAE under the Agreement "arise . . . out of or in relation to or in connection with" the Agreement, and thus fall squarely within the Arbitration Provision.

70.    Al Maya has served five days' written notice of its application on Gemco and demanded that Gemco arbitrate the parties' dispute.

71.    Gemco has nonetheless failed, neglected, or refused to arbitrate Al Maya's claims under the Agreement.

72.    The Southern District of New York would, save for the Agreement, have jurisdiction under Title 28, in a civil action, of the subject matter of a suit arising out of the controversy between the parties.  Specifically, this Court would have diversity jurisdiction under 28 U.S.C. 1332(a).

73.    There is no genuine factual dispute as to the making of the agreement for arbitration or Gemco's failure to comply therewith.

74.     Accordingly, Al Maya has a right under 9 U.S.C. § 4 to an order compelling Gemco to "proceed to arbitration [with Al Maya] in accordance with the terms of the agreement" to arbitrate.

## SECOND CAUSE OF ACTION

### Under the FAA (9 U.S.C. § 5): Order Appointing Arbitrator

75.     Petitioner repeats and re-alleges each and every allegation set forth in paragraphs 1 through 74 as though fully set forth herein.

76.     Section 2 of the FAA, 9 U.S.C. § 2, provides, in relevant part, that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

77.     Section 5 of the FAA, 9 U.S.C. § 5, provides, in relevant part, that: "If in the agreement provision . . . no method be provided therein [for the naming or appointing of an arbitrator or arbitrators], . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein[.]"

78.     Gemco and Al Maya entered into a valid and binding Agency Agreement, dated June 16, 1999, which contains a valid and binding Arbitration Provision. The Arbitration Provision expressly provides for "final and binding" arbitration of "all disputes and or differences" that may "arise between the parties out of or in relation to or in connection with" the Agreement.

79.     There is an existing controversy between the parties arising out of the Agreement and its Arbitration Provision.

80.     Agreements to arbitrate are interpreted broadly according to their terms. *See supra* paragraph 68.

81.     Al Maya's breach of contract and other claims relating to Gemco's unilateral termination of the Agreement, its other breaches of the Agreement, and its interference with Al Maya's contractual and business relationships in connection with Al Maya's rights as the exclusive distributor of American Garden branded products in the UAE under the Agreement "arise . . . out of or in relation to or in connection with" the Agreement, and thus fall squarely within the Arbitration Provision.

82.     The Arbitration Provision states that arbitration between the parties shall be conducted by a "practicing Auditor or Lawyer in internationally reputed Audit / law firm"

83.     The Arbitration Provision does not, however, provide a method for the naming or appointing of the arbitrator.

84.     Accordingly, Al Maya has a right under 9 U.S.C. § 5 to an order designating and appointing an arbitrator who is a "practicing Auditor or Lawyer in internationally reputed Audit / law firm" to act as the arbitrator under the Arbitration Provision with the same force and effect as if he or she had been specifically named therein.

### THIRD CAUSE OF ACTION

**Under the Laws of the State of New York:**
**Judgment and Damages Against Gemco for its Breaches of Contract, Tortious Interference**
**with Contracts, and Tortious Interference with Business Relations**

85.     Petitioner repeats and re-alleges each and every allegation set forth in paragraphs 1 through 84 as though fully set forth herein.

86.     In the event this Court declines to order arbitration under 9 U.S.C. § 4, Al Maya seeks, in the alternative, judgment and damages against Gemco for its numerous, material breaches of the Agreement, its tortious interference with Al Maya's contracts, and its tortious interference with Al Maya's business relations under the laws of the State of New York, as set forth herein.

## Breaches of the Agreement

87.     Al Maya and Gemco entered into a valid and binding contract on June 16, 1999.

88.     The contract is in full force and effect, having most recently automatically renewed for a two-year term on June 16, 2013.

89.     Al Maya has at all times performed its obligations under the parties' Agreement.

90.     Gemco has never formally asserted or pursued any breach of contract or improper termination of contract claim.

91.     Gemco has without justification repeatedly breached its obligations under the Agreement in a number of material respects. These breaches of the Agreement include, but are not limited to, the following: Gemco purported to terminate the parties' relationship approximately 21 months before the end of its term; Gemco purported to change distributors for the UAE region, and informed its customers of that change, despite its contractual obligation to rely on Al Maya as its "Exclusive Distributors"; Gemco refused to honor its contractual obligation to supply Al Maya with American Garden products; Gemco sought to prohibit Al Maya from marketing and selling American Garden products, despite its contractual right to do so; Gemco has for many years actively sold its American Garden products to a distributor other than Al Maya for sale, distribution or passage in or through the UAE; and Gemco failed to pay outstanding invoices owed to Al Maya, which are currently approximately $1.17 million.

92.     In addition, the October 8 Letter from Gemco to its customers compounded each of the breaches of the Agreement noted above.

93.     Additional allegations regarding Gemco's breaches of the Agreement are set forth in paragraphs 36 through 45 and are incorporated as if fully set forth herein.

94.     Al Maya has suffered damages as a direct and proximate result of Gemco's material breaches of the Agreement, including backward and forward-looking lost income through the expiration of the Agreement on June 15, 2015, costs associated with Al Maya's ongoing American Garden-related shipping, shelf space, salary, and other obligations, payment

for Al Maya's inventory of American Garden merchandise, harm to Al Maya's ongoing business and contractual relationships, reputational harm, compensation for the moneys invested by Al Maya in the American Garden brand, and outstanding unpaid invoices.

### Tortious Interference with Contracts

95.     Al Maya has entered into valid contracts with numerous third parties in connection with its distribution of American Garden products.  These third parties include supermarkets and other retail establishments in the UAE that sell American Garden products.

96.     Gemco had knowledge of these contracts.

97.     Gemco intentionally and without justification encouraged and procured its customers to terminate and breach the contracts they had with Al Maya with respect to the American Garden brand by sending the October 8 Letter to Gemco's customers in the UAE notifying them of Gemco's "change in supplier" in the UAE.  The October 8 Letter stated that the new "authorized distributor shall be National Trading & Developing Establishment"; represented that this purported new authorized distributed was already "presently servicing [the customer's] account"; and instructed Gemco's customers to "place all of your orders" through this purported new authorized distributor.

98.     On information and belief, further evidence and examples of Gemco's intentional and unjustified encouragement and procurement of its customers' termination and breach of their contracts with Al Maya is in Gemco's possession, custody, or control, or in the possession, custody, or control of Gemco's customers.

99.     As a direct and proximate result of Gemco's actions, a number of the third parties with whom Al Maya had contractual relationships have actually breached their contracts with Al Maya.

100.    Each transmittal of the October 8 Letter to a different recipient with whom Al Maya had contractual relationships constitutes an independent tort.  As such, Gemco's

transmittal of the October 8 Letter to numerous recipients constituted a presently-unknown number of independent acts of tortious interference with Al Maya's contracts.

101.    Al Maya has suffered damages as a direct and proximate result of Gemco's interference with Al Maya's contracts.

### Tortious Interference with Business Relations

102.    The October 8 Letter also interfered with Al Maya's longstanding, ongoing, and valuable business relations with its customers and the broader business community in the UAE.

103.    Al Maya has business relations with numerous third parties in the UAE in connection with its distribution of American Garden products.

104.    Gemco interfered with those business relations, including by transmitting the October 8 Letter.

105.    On information and belief, further evidence and examples of Gemco's interference with Al Maya's business relations is in Gemco's possession, custody, or control, and in the possession, custody, or control of Gemco's customers.

106.    In interfering with Al Maya's business relations, Gemco acted with a wrongful purpose or used dishonest, unfair, or improper means.

107.    As a direct and proximate result of Gemco's acts, Al Maya's relationships with a number of the third parties with whom Al Maya has business relations have been injured.

108.    Each transmittal of the October 8 Letter to a different recipient with whom Al Maya had business relations constitutes an independent tort. As such, Gemco's transmittal of the October 8 Letter to numerous recipients constituted a presently-unknown number of independent acts of tortious interference with Al Maya's business relations.

109.    Al Maya has suffered damages as a direct and proximate result of Gemco's interference with Al Maya's business relations.

### Conclusion Regarding the Third Cause of Action

110.    Al Maya estimates that the damages it has suffered as a result of Gemco's breaches of contract and tortious acts are reasonably anticipated to exceed $50 million.

111.    Accordingly, if this Court does not order arbitration, it should, in the alternative, proceed to the merits of Al Maya's claims, enter judgment against Gemco on its breach of contract and tort claims, and award damages to Al Maya in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court order appropriate relief, including, but not limited to, the following:

a.    An order directing and compelling Gemco to enter into binding arbitration of Al Maya's breach of contract and tort claims before an arbitrator located within the Southern District of New York, in accordance with 9 U.S.C. § 4;

b.    An order designating and appointing a "practicing Auditor or Lawyer in [an] internationally reputed Audit / law firm" located within the Southern District of New York to act as the arbitrator under the Arbitration Provision with the same force and effect as if he or she had been specifically named therein, in accordance with 9 U.S.C. § 5 and in conformity with the Agreement's terms;

c.    In the alternative, a judgment finding in Petitioner's favor on its breach of contract and tort claims, together with an award of damages suffered therefrom, in an amount to be determined at trial, but reasonably anticipated to exceed $50 million, together with pre-judgment and post-judgment interest; and

d.    Such additional or different relief as the Court may deem just and proper, including an award to Al Maya of reasonable attorneys' fees and the costs of this action.

DATED: January 8, 2014

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: _____

    Mitchell A. Karlan
      mkarlan@gibsondunn.com
    Akiva Shapiro
      ashapiro@gibsondunn.com
    200 Park Avenue
    New York, New York 10166
    Telephone: 212-351-3905
    Facsimile: 212-351-4035

    *Attorneys for Petitioner*
    AL MAYA TRADING ESTABLISHMENT

23