UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE ENGELMAYER

---

AL MAYA TRADING ESTABLISHMENT,

           Petitioner,

       v.

GLOBAL EXPORT MARKETING CO.,
LTD.,

           Respondent.



14 CV 0275

CASE NO.

RECEIVED
JAN 14 2014
U.S.D.C. S.D. N.Y.
CASHIERS

---

## DECLARATION OF MITCHELL A. KARLAN

I, MITCHELL A. KARLAN, declare, under penalty of perjury, that the following is true and correct to the best of my knowledge:

1.      I am a partner with the law firm of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), counsel for Petitioner Al Maya Trading Establishment ("Al Maya") in the above-captioned matter.  I am also a member of the Bar of this Court.  I make this declaration in support of Al Maya's Petition for an Order Directing Arbitration and Appointing an Arbitrator, or, in the Alternative, For Other Relief.

2.      Attached hereto as **Exhibit A** is a true and correct copy of an Agency Agreement dated June 16, 1999 by and between Al Maya and Respondent Global Export Marketing Co., Ltd. ("Gemco").

3.      Attached hereto as **Exhibit B** is a true and correct copy of a letter dated November 12, 2013 from Gemco's representative, Joseph K. Gheriafi, ST&P Attorneys and Agents, to the undersigned.

4.      Attached hereto as **Exhibit C** is a true and correct copy of Al Maya's Notice of Application for an Order Compelling Arbitration, dated January 2, 2014, together with an Affidavit of Service thereof on Gemco, also dated January 2, 2014.

5.      Attached hereto as **Exhibit D** is a true and correct copy of an email dated September 28, 2013 from Kevin Egan, Gemco's Chief Executive Officer, to Al Maya's Deepak Pagarani and Ashok Purswani.

6.      Attached hereto as **Exhibit E** is a true and correct copy of an email dated October 2, 2013 from Gemco's Biju Panicker to Al Maya's Ashok Purswani.

7.      Attached hereto as **Exhibit F** is a true and correct copy of a letter dated October 6, 2013 from Kevin Egan to Al Maya.

8.      Attached hereto as **Exhibit G** is a true and correct copy of a letter dated October 8, 2013 from Kevin Egan to Gemco's "Valued Customer."

9.      Attached hereto as **Exhibit H** is a true and correct copy of a letter dated October 9, 2013 from Al Maya's Mohammad Essa Mohd. Al Samt to Kevin Egan.

10.     Attached hereto as **Exhibit I** is a true and correct copy of a letter dated October 15, 2013 from Kevin Egan to Mohammad Essa Mohd. Al Samt.

11.     Attached hereto as **Exhibit J** is a true and correct copy of a letter dated October 31, 2013 from the undersigned to Joseph Gheriafi.

12.     Attached hereto as **Exhibit K** is a true and correct copy of a letter dated December 2, 2013 from the undersigned to Joseph Gheriafi.

2

I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed on January 8, 2014
New York, New York

Mitchell A. Karlan
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212-351-3905
Facsimile: 212-351-4035

**Exhibit A**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014

# AGENCY AGREEMENT

This agreement is made on this 16th day of June 1999 by and between :

First Party
Global Export Marketing Co Ltd
11 Penn Plaza, Suite 1031
New York, NY 10001 , USA

Second Party
M/s Al Maya Trading Est.
P.O. Box 11096
Dubai
United Arab Emirates

## PREAMBLE
Whereas the First Party is the manufacturer and or exporter of American Garden branded items, ( Hereinafter called " merchandise" ) and they are desirous of appointing Second party as their Sole Agent/ Exclusive Distributors

## NOW THIS AGREEMENT WINTNESSETH AS UNDER:
01. The above preamble shall form an integral and indivisible part of this agreement.
02. The First party hereby appoints the Second party as their Sole Agent / Exclusive Distributors for the " merchandise" for the entire territory of UAE ( hereinafter called "the designated territory .")
03. The " Merchandise" covered under this agreement , American Garden branded items, manufactured, processed and or exported by the First Party from time to time.
04. The First Party shall not directly sell the " Merchandise " to the " designated territory" through any channels except the Second Party .
05. The Second Party agrees to promote sales of the " merchandise" supplied to them by the First party in the "designated territory" and to make arrangements for necessary advertisements and or promotions,etc. as may be mutually arid by and between the parties hereto from time to time.
06. The First Party shall supply to the Second party the " merchandise" at such price or prices as is / are mutually agreed between the parties.
07. The First Party hereby reserve all of its rights concerning the Trade marks , Brand Names and Designs of the " merchandise" except for the Second party being authorized to use the said Trade Marks and or Brand Names including Designs for the purpose of marketing the " merchandise " in its capacity as Agent/ Distributor of the " merchandise ."
08. This agreement shall remain valid for a period of two ( 2 ) years from the date herein above written in this Agreement and hall automatically renewed for equal period (s) unless either party informs the other in writing at least three ( 3 ) months in advance

of its intention to terminate this agreement. Either party reserves the right to terminate this arrangement by giving the other party clear three ( 3 ) months written notice of its intention to do so.

09. All disputes and or differences that may arise between the parties hereto out of or in relation to or in connection with this agreement or for any breach thereof shall be settled through arbitration by a practicing Auditor or Lawyer in internationally reputed Audit / law firm in accordance with the rules and regulations obtaining in the United Arab Emirates and the award given by the arbitrator shall be final and binding on both the parties.

IN WITNESS WHEREOF, the parties hereto have signed this agreement on the day, month and year herein above written .

For and on behalf of

Global Export Marketing Co Ltd

For and on behalf of

Al Maya Trading Est.

GLOBAL EXPORT MARKETING CO., LTD.
ELEVEN PENN PLAZA, SUITE 1031
NEW YORK, N.Y. 10001
U.S.A.

THE JAMAICA CHAMBER OF COMMERCE
Organised in 1919 as the Merchants Association of Jamaica
NEW YORK STATE

P. O. Box 11096 Dubai
AL MAYA TRADING EST.

**Exhibit B**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014



Dubai, November 12, 2013

Via Email

Mr. Mitchell A. Karlan,
**GOBSON, DUNN & CRUTCHER LLP,**
200 Park Avenue,
New York, NY 10166-0193,
**USA**

Our Ref.:   12687.107.971.13

Your Ref.:   Please quote

email:   **mkarlan@gibsonunn.com**

**Without Prejudice**

Re:   <u>Breach of Agency Agreement</u>

Dear Mr. Karlan,

Thank you for your letter dated October 31, 2013.

In reply to your letter, please note the following :

1) The Agreement attached to your letter, provided by your client, has never existed. Our client's reasons are as follows:
   a) Our client has never signed such an Agreement;
   b) In order for such an agreement to be legal and binding under the UAE laws, both parties were supposed to sign on the first page as well as on the second;
   c) In addition to (b) above, the Agreement was supposed to be signed before a Notary Public (i.e. not a Chamber of Commerce) and then to be duly legalized to the Consulate of the UAE;
   d) We have no idea on why the Agreement was attested by The Jamaica Chamber of Commerce without attestation of signatories? not mentioning that there is no date;
   e) Our client has many communications received from your client requesting to sign a Distributorship Agreement;
   f) Since my client was considering signing an Agreement with your client, they exchanged many emails and versions of the Agreement to be signed, some of them with your client's comments;
   g) If the alleged Agreement existed, why they were insisting on re-signing a new one and negotiating its terms and conditions?
   h) Our client believe that the alleged Agreement is falsified, which is not a first for your client. It is worthy to remind your client that they falsified a document dated March 16, 2004 on our client's letterhead and forged signatures, claiming that my client authorized them to produce "Corn Flour" bearing his trademark "American Garden". The falsified document was circulated in the UAE to manufactures and points of sale, that some of them provided us with the copy showing your client's fax details.

2) The Corn Flour matter was just the beginning, not just by falsifying documents, but also an infringement process. Since 2004, your client used my client's trust and started manufacturing all kind of food products as well as other items (i.e. plastic cups, plates…etc.) bearing my client's trademark, without a license or even the knowledge of my client. We came to know about the infringement when their infringed goods were sold everywhere. This matter was subject to a Cease and Desist letter dated January 30, 2007, that I sent to your client and we are still holding all proof. Moreover, your client admitted to me personally the infringement act, since I conducted the negotiation with your to reach an amicable solution, as per my client's preference to keep the good relationship, rather than prosecuting your client as per the UAE applicable Laws;

**Middle East**
Bahrain
Goza Strip
Iraq
Jordan
Kuwait
Lebanon
Oman
Qatar
Saudi Arabia
Syria
UAE
West Bank
Yemen

**Africa**
Algeria
Angola
ARIPO
Djibouti
DR Congo
Egypt
Ethiopia
Ghana
Kenya
Libya
Madagascar
Morocco
Mozambique
Nigeria
OAPI
Rwanda
Senegal
South Africa
Sudan
Tanzania
Tunisia
Zambia
Zanzibar

**Asia**
Afghanistan
Bangladesh
Brunei
Cambodia
China, PRC
India
Indonesia
Iran
Laos
Malaysia
Mongolia
Myanmar
Nepal
Pakistan
Sri Lanka
Vietnam

**Europe**
Albania
Belarus
Bosnia
Bulgaria
Croatia
Cyprus
Czech Rep.
Kosovo
Macedonia
Moldova
Montenegro
Romania
Serbia
Slovakia
Slovenia
Turkey

**12687.107.971.13**

CORPORATE OFFICE
2011 PRISME TOWER, BUSINESS BAY, P.O.BOX 14848, DUBAI, UAE   TEL: +971 4 335 5844   FAX: +971 4 335 5899   uae@stplegal.com
www.stplegal.com

3) Despite my client's amicable approach in 2007, your client continued his actions to undermine the business relationship between them, for example:
    a) Your client started manufacturing similar items to our client's products and was selling them to competitors;
    b) Your client started manufacturing similar items to our client's products under his brands, among them "Daily Fresh";
    c) Your client started selling items copying our client's labels under the brand "Global Choice";
    d) Your client has engaged in selling and marketing our client's products in the UAE.

4) Since 2007, my client communicated with your client on many occasions regarding their performance, with the best intention to remedy my client's concerns. Your client's irresponsibility resulted in drop of sales, decline in primary and secondary business for various categories including loss of market shares. Your client ignored all concerns raised by my client.

5) Regarding your client's request that my client to settle pending debit notes of $1.8 million, my client is verifying tem to confirm the correct due amount and will be settling them in due course.

Thanking you for your kind attention, we remain

Very truly yours,
ST&P ATTORNEYS AND AGENTS
Joseph K. Gheriafi

**JKG/vag**

12687.107.971.13

**Exhibit C**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AL MAYA TRADING ESTABLISHMENT,

        Petitioner,

        v.

GLOBAL EXPORT MARKETING CO., LTD.,

        Respondent.

CASE NO. _____

**NOTICE OF APPLICATION FOR AN
ORDER DIRECTING ARBITRATION**

Mitchell A. Karlan
Akiva Shapiro
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: 212-351-3905
Facsimile: 212-351-4035
mkarlan@gibsondunn.com

*Attorneys for Petitioner*
AL MAYA TRADING
ESTABLISHMENT

Petitioner Al Maya Trading Establishment ("Al Maya"), through its undersigned counsel, states as follows:

1.    Pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, Al Maya hereby gives its Notice of Application for an Order Directing Arbitration (the "Notice of Application").

2.    **Al Maya intends to file an application with the United States District Court for the Southern District of New York for an order directing arbitration under 9 U.S.C. § 4 in no less than 5 days from the date of service on Respondent Global Export Marketing Co. Ltd. ("Gemco") of this Notice of Application.**

3.    9 U.S.C. § 4 states in relevant part: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court [that otherwise has jurisdiction over the subject matter] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."

4.    Petitioner Al Maya entered into a written agreement with Gemco, dated June 16, 1999 (the "Agency Agreement" or "Agreement"), whereby Gemco appointed Al Maya as its exclusive distributor in the United Arab Emirates for Gemco's American Garden branded products. A true and correct copy of the Agreement is attached hereto as Exhibit A.

5.    Article 9 of the Agreement contains a valid and binding arbitration provision (the "Arbitration Provision"). The Arbitration Provision expressly provides for "final and binding" arbitration of "all disputes and or differences" that may "arise between the parties out of or in relation to or in connection with" the Agreement. *Id.*

6.    There is an existing controversy between the parties arising out of or in relation to the Agreement, namely, Gemco's unauthorized, unilateral termination of the Agreement, its multiple material breaches thereof, and its tortious conduct in connection with these breaches of contract. Al Maya's breach of contract and other claims "arise . . . out of or in relation to or in connection with" the Agreement, Ex. A art. 9, and thus fall squarely within the Arbitration Provision.

7.    The parties and their counsel have now corresponded extensively regarding Gemco's conduct, during the course of which Gemco has made plain its refusal to abide by the Agreement's

terms, or even to accept the existence and binding nature of the Agreement itself, including, necessarily, the Arbitration Provision.  Accordingly, Gemco has failed, neglected, and/or refused to arbitrate under the parties' written agreement for arbitration.

8.      For example, in response to a letter dated October 31, 2013 from Al Maya's counsel demanding that Gemco cease and remedy its breaches of contract and tortious conduct, attached hereto as Exhibit B, Gemco's counsel boldly asserted that the parties' Agency Agreement "never existed" and was "never signed" by Gemco.  A true and correct copy of Gemco's November 12, 2013 letter is attached hereto as Exhibit C.

9.      Gemco's counsel has also failed to respond to or acknowledge the letter from Al Maya's counsel dated December 2, 2013 responding to Gemco's November 12 letter.

10.     Accordingly, Al Maya intends to make an application under 9 U.S.C. § 4 for an order directing Gemco to proceed to arbitration in accordance with the terms of the Agreement.

11.     Nevertheless, in a final attempt to avoid needless litigation in federal court, Al Maya encloses hereto as Exhibit D a proposed Stipulation of Consent to Arbitration for execution by Gemco.  Unless an original hard copy of the enclosed Stipulation of Consent to Arbitration, executed by a representative of Gemco with power to bind Gemco thereto, is received by Al Maya's counsel at the address provided below within 5 days of the date of service of this Notice of Application on Gemco, Al Maya will file its application to the United States District Court for the Southern District of New York under 9 U.S.C. § 4 for an order directing Gemco to proceed to arbitration in accordance with the terms of the Agreement.

12.     The executed Stipulation of Consent to Arbitration must be timely returned to the undersigned at the following address:

> Mitchell A. Karlan
> Gibson Dunn & Crutcher LLP
> 200 Park Avenue
> New York, New York 10166

13.     Gemco's failure to return the executed Stipulation of Consent to Arbitration will be deemed further evidence of Gemco's failure, neglect, or refusal to arbitrate under the Agreement.

DATED: December 31, 2013

GIBSON, DUNN & CRUTCHER LLP

By: _____
Mitchell A. Karlan
Akiva Shapiro

200 Park Avenue
New York, New York 10166
Telephone: 212-351-3905
Facsimile: 212-351-4035
mkarlan@gibsondunn.com

*Attorneys for Petitioner*
AL MAYA TRADING ESTABLISHMENT

3

**Exhibit A**
to Al Maya Trading Establishment's
Notice of Application for an Order
Directing Arbitration

## AGENCY AGREEMENT

This agreement is made on this 16th day of June 1999 by and between :

First Party
Global Export Marketing Co Ltd
11 Penn Plaza, Suite 1031
New York, NY 10001 , USA

Second Party
M/s Al Maya Trading Est.
P.O. Box 11096
Dubai
United Arab Emirates

PREAMBLE
Whereas the First Party is the manufacturer and or exporter of American Garden branded items, ( Hereinafter called " merchandise " ) and they are desirous of appointing Second party as their Sole Agent/ Exclusive Distributors

NOW THIS AGREEMENT WINTNESSETH AS UNDER:
01. The above preamble shall form an integral and indivisible part of this agreement.
02. The First party hereby appoints the Second party as their Sole Agent / Exclusive Distributors for the "merchandise" for the entire territory of UAE ( hereinafter called "the designated territory .")
03. The " Merchandise" covered under this agreement , American Garden branded items, manufactured, processed and or exported by the First Party from time to time.
04. The First Party shall not directly sell the " Merchandise " to the " designated territory" through any channels except the Second Party .
05. The Second Party agrees to promote sales of the " merchandise" supplied to them by the First party in the "designated territory" and to make arrangements for necessary advertisements and or promotions,etc. as may be mutually arid by and between the parties hereto from time to time.
06. The First Party shall supply to the Second party the " merchandise " at such price or prices as is / are mutually agreed between the parties.
07. The First Party hereby reserve all of its rights concerning the Trade marks , Brand Names and Designs of the " merchandise" except for the Second party being authorized to use the said Trade Marks and or Brand Names including Designs for the purpose of marketing the " merchandise " in its capacity as Agent/ Distributor of the " merchandise ."
08. This agreement shall remain valid for a period of two ( 2 ) years from the date herein above written in this Agreement and hall automatically renewed for equal period (s) unless either party informs the other in writing at least three ( 3 ) months in advance

of its intention to terminate this agreement. Either party reserves the right to terminate this arrangement by giving the other party clear three ( 3 ) months written notice of its intention to do so.

09. All disputes and or differences that may arise between the parties hereto out of or in relation to or in connection with this agreement or for any breach thereof shall be settled through arbitration by a practicing Auditor or Lawyer in internationally reputed Audit / law firm in accordance with the rules and regulations obtaining in the United Arab Emirates and the award given by the arbitrator shall be final and binding on both the parties.

IN WITNESS WHEREOF, the parties hereto have signed this agreement on the day, month and year herein above written .

For and on behalf of

Global Export Marketing Co Ltd

For and on behalf of

Al Maya Trading Est.

THE JAMAICA CHAMBER OF COMMERCE
Organized in 1919 as the Merchants Association of Jamaica
NEW YORK STATE

GLOBAL EXPORT MARKETING CO., LTD.
ELEVEN PENN PLAZA, SUITE 1031
NEW YORK, N.Y. 10001
U.S.A.

P. O. Box  11058 Dubai

AL MAYA TRADING EST.

**Exhibit B**
to Al Maya Trading Establishment's
Notice of Application for an Order
Directing Arbitration

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mitchell A. Karlan
Telephone: (212) 351-3827
· Facsimile: (212) 351-5254
mkarlan@gibsondunn.com

October 31, 2013

VIA ELECTRONIC MAIL

Mr. Joseph Gheriafi
ST&P Attorneys and Agents
P.O. Box 14848
Dubai, U.A.E.
uae@stplegal.com

Re:   Breach of Agency Agreement by Global Export Marketing Co. Ltd.

Dear Mr. Gheriafi:

We represent Al Maya Trading Establishment ("Al Maya"), which for many years has served as your client Global Export Marketing Co. Ltd.'s ("Gemco") exclusive distributor for American Garden branded products in the United Arab Emirates, pursuant to an Agency Agreement (the "Agreement") entered into between Al Maya and Gemco on June 16, 1999 (attached hereto as Exhibit A).

Among other relevant provisions, the Agreement appoints Al Maya as Gemco's "Sole Agent" and "Exclusive Distributors" for American Garden branded products "for the entire territory of the UAE" (Article 2), specifically prohibits Gemco from selling American Garden products to the U.A.E. "through any channels" other than through Al Maya (Article 4), and directs that Gemco "shall supply" American Garden products to Al Maya (Article 6). The Agreement most recently renewed "automatically" on June 16, 2013 for a period of two years (Article 8).

For approximately 25 years, Al Maya and Gemco have maintained a continuous, mutually beneficial relationship. Al Maya has promoted Gemco's American Garden products in the U.A.E., invested in infrastructure for the shipment and distribution of these products, hired a sales force devoted entirely to Gemco's products, and significantly developed the reputation of the American Garden brand in the region. As a result of Al Maya's efforts and significant investments in the brand, sales of American Garden branded products distributed by Al Maya have grown steadily over the life of the relationship, reaching approximately $27 million in 2012. Sales figures were expected to continue to increase, reaching projected sales of $42.5 million in 2015. In addition, Al Maya serves as the U.A.E. distributor for other Gemco brands; Al Maya sales of those brands totaled $9 million in 2012, and are projected to reach $12 million in 2015. In recognition of Al Maya's efforts and success, Gemco awarded Al Maya for their "Continuous Outstanding Partnership of 2 decades" in 2008, and has subsequently awarded Al Maya its "Distributor of the Year" award.

# GIBSON DUNN

Mr. Joseph Gheriafi
October 31, 2013
Page 2

However, it has come to our attention that Gemco has recently (and, in fact, for a period of years) flagrantly breached the Agreement in multiple, material respects, resulting in millions of U.S. dollars of damages to Al Maya.

In particular, Gemco has materially breached the Agreement in the following respects:

- At the end of September 2013, Gemco purported to unilaterally terminate the parties' relationship, despite the fact that the Agreement continues in full force and effect for a term of nearly two years, in accordance with Article 8 of the Agreement. Following a meeting between representatives of the two parties, on September 28 (less than 48 hours later), Gemco's CEO, Kevin Egan, wrote to Al Maya declaring that Gemco's decision to terminate the relationship was immediate and "final" and that the decision applied to "all brands."

- A few days later, on October 2, in violation of Articles 2 and 4 of the Agreement, Gemco's Biju Panicker informed Al Maya in writing that Gemco's "new distributor" would take charge on October 25, and purported to instruct Al Maya to stop selling American Garden products in the U.A.E. at that time.

- On October 6, 2013, Mr. Egan sent a purported notice of Gemco's "final termination of all our verbal and written agreements" to Al Maya. Mr. Egan informed Al Maya that Gemco would "no longer supply" it with American Garden products, in violation of Article 6 of the Agreement, and purported to forbid Al Maya from "marketing, selling or using [the American Garden] brand in anyway [sic]," again in violation of Articles 2 and 4.

- Gemco has failed to confirm or fulfill Al Maya's July and August 2013 orders, also in breach of Article 6 of the Agreement.

- For many years, Gemco has violated the Sole Agent and Exclusive Distributor provisions (Article 2 and 4) by selling American Garden branded products to Spire International L.L.C. for sale, distribution, or passage in or through the U.A.E.

In addition, on October 8, Gemco sent a letter to its customers in the U.A.E., notifying them of its purported "change" in supplier. In that letter, Gemco informed its customers that the "authorized distributor . . . shall be National Trading & Developing Establishment," which, Gemco said, is "presently servicing your account," and instructed its customers to "place all of your orders" through the purported new authorized distributor. This communication with Al Maya customers and the broader business community undermines and irreparably harms

# GIBSON DUNN

Mr. Joseph Gheriafi
October 31, 2013
Page 3

Al Maya's reputation and interferes with Al Maya's longstanding, ongoing, and valuable business and contractual relationships.

In light of Gemco's conduct, we demand that Gemco take the following immediate steps to remedy its breaches and make Al Maya whole:

    (1) Immediately cease supplying American Garden branded products to National Trading & Developing Establishment, Spire International L.L.C., and any other companies that purchase, distribute, or transship American Garden products within or through the U.A.E.;

    (2) Immediately renounce any agreements, whether verbal or written, between Gemco and any company other than Al Maya authorizing or otherwise relating to the purchase, distribution, or transshipment of American Garden products within or through the U.A.E.;

    (3) Immediately recommence supplying American Garden branded products to Al Maya, in accordance with the Agreement;

    (4) Immediately issue a letter to the recipients of Gemco's October 8, 2013 letter, in form and content acceptable to Al Maya, retracting the October 8 letter and stating that Al Maya always has been, and continues to be, Gemco's Sole Agent and Exclusive Distributor in the U.A.E.;

    (5) Immediately pay Al Maya damages for lost profits resulting from Gemco's current and past breaches of the Agreement, amounts already incurred in connection with the breaches, and reputational loss in the marketplace resulting from GEMCO's reckless breach of the contract and its interference with Al Maya's contractual and business relationships; and

    (6) Immediately pay any outstanding invoices owed to Al Maya, which are currently approximately $1.8 million.

If Gemco does not commit in writing by the close of business Eastern Standard Time on Tuesday, November 5, that it will cure its breaches of contract and make Al Maya whole by immediately taking the steps set forth above, Al Maya will have no choice but to commence appropriate legal action against Gemco.

Moreover, if Gemco does not immediately cure its breaches of the Agreement and pay damages to Al Maya, Al Maya reserves its right to seek, in addition to the damages outlined above, forward-looking damages for lost profits and other costs through the expiration of the

# GIBSON DUNN

Mr. Joseph Gheriafi
October 31, 2013
Page 4

Agreement on June 15, 2015, including costs associated with Al Maya's ongoing American Garden-related shipping, shelf space, salary, and other obligations, payment for Al Maya's inventory of American Garden merchandise, and compensation for the moneys invested by Al Maya in the American Garden brand. We anticipate that these additional damages will exceed $50 million.

Al Maya and Gemco have maintained a continuous, mutually beneficial relationship for 25 years. Al Maya has invested millions of dollars in the American Garden brand and wants nothing more than to repair and continue its relationship with Gemco for years to come. We hope that your client will see fit to resolve this dispute amicably so both parties can move forward together. At the same time, Al Maya reserves all of its rights under the Agreement and governing law to take appropriate legal action.

Finally, please provide me with the name of the attorney Gemco is retaining in the United States so I can communicate with that person going forward.

Sincerely,

Mitchell A. Karlan

Enclosure

EXHIBIT A

## AGENCY AGREEMENT

This agreement is made on this 16th day of June 1999 by and between :

First Party
Global Export Marketing Co Ltd
11 Penn Plaza, Suite 1031
New York, NY 10001 , USA

Second Party
M/s Al Maya Trading Est.
P.O. Box 11096
Dubai
United Arab Emirates

PREAMBLE
Whereas the First Party is the manufacturer and or exporter of American Garden branded items, ( Hereinafter called " merchandise" ) and they are desirous of appointing Second party as their Sole Agent/ Exclusive Distributors

NOW THIS AGREEMENT WINTNESSETH AS UNDER:
01. The above preamble shall form an integral and indivisible part of this agreement.
02. The First party hereby appoints the Second party as their Sole Agent / Exclusive Distributors for the " merchandise" for the entire territory of UAE ( hereinafter called "the designated territory .")
03. The " Merchandise" covered under this agreement , American Garden branded items, manufactured, processed and or exported by the First Party from time to time.
04. The First Party shall not directly sell the " Merchandise " to the " designated territory" through any channels except the Second Party .
05. The Second Party agrees to promote sales of the " merchandise" supplied to them by the First party in the "designated territory" and to make arrangements for necessary advertisements and or promotions,etc. as may be mutually arid by and between the parties hereto from time to time.
06. The First Party shall supply to the Second party the " merchandise" at such price or prices as is / are mutually agreed between the parties.
07. The First Party hereby reserve all of its rights concerning the Trade marks , Brand Names and Designs of the " merchandise" except for the Second party being authorized to use the said Trade Marks and or Brand Names including Designs for the purpose of marketing the " merchandise " in its capacity as Agent/ Distributor of the " merchandise ."
08. This agreement shall remain valid for a period of two ( 2 ) years from the date herein above written in this Agreement and hall automatically renewed for equal period (s) unless either party informs the other in writing at least three ( 3 ) months in advance

of its intention to terminate this agreement. Either party reserves the right to terminate this arrangement by giving the other party clear three ( 3 ) months written notice of its intention to do so.

09. All disputes and or differences that may arise between the parties hereto out of or in relation to or in connection with this agreement or for any breach thereof shall be settled through arbitration by a practicing Auditor or Lawyer in internationally reputed Audit / law firm in accordance with the rules and regulations obtaining in the United Arab Emirates and the award given by the arbitrator shall be final and binding on both the parties.

IN WITNESS WHEREOF, the parties hereto have signed this agreement on the day, month and year herein above written .

For and on behalf of

Global Export Marketing Co Ltd

For and on behalf of

Al Maya Trading Est.

**Exhibit C**
to Al Maya Trading Establishment's
Notice of Application for an Order
Directing Arbitration



Dubai, November 12, 2013

| Via Email |
|---|

Mr. Mitchell A. Karlan,
**GOBSON, DUNN & CRUTCHER LLP,**
200 Park Avenue,
New York, NY 10166-0193,
USA

Our Ref.:   12687.107.971.13

Your Ref.:   Please quote

email:   mkarlan@gibsonunn.com

<u>Without Prejudice</u>

Re:   <u>Breach of Agency Agreement</u>

Dear Mr. Karlan,

Thank you for your letter dated October 31, 2013.

In reply to your letter, please note the following :

1) The Agreement attached to your letter, provided by your client, has never existed. Our client's reasons are as follows:
   a) Our client has never signed such an Agreement;
   b) In order for such an agreement to be legal and binding under the UAE laws, both parties were supposed to sign on the first page as well as on the second;
   c) In addition to (b) above, the Agreement was supposed to be signed before a Notary Public (i.e. not a Chamber of Commerce) and then to be duly legalized to the Consulate of the UAE;
   d) We have no idea on why the Agreement was attested by The Jamaica Chamber of Commerce without attestation of signatories? not mentioning that there is no date;
   e) Our client has many communications received from your client requesting to sign a Distributorship Agreement;
   f) Since my client was considering signing an Agreement with your client, they exchanged many emails and versions of the Agreement to be signed, some of them with your client's comments;
   g) If the alleged Agreement existed, why they were insisting on re-signing a new one and negotiating its terms and conditions?
   h) Our client believe that the alleged Agreement is falsified, which is not a first for your client. It is worthy to remind your client that they falsified a document dated March 16, 2004 on our client's letterhead and forged signatures, claiming that my client authorized them to produce "Corn Flour" bearing his trademark "American Garden". The falsified document was circulated in the UAE to manufactures and points of sale, that some of them provided us with the copy showing your client's fax details.

2) The Corn Flour matter was just the beginning, not just by falsifying documents, but also an infringement process. Since 2004, your client used my client's trust and started manufacturing all kind of food products as well as other items (i.e. plastic cups, plates…etc.) bearing my client's trademark, without a license or even the knowledge of my client. We came to know about the infringement when their infringed goods were sold everywhere. This matter was subject to a Cease and Desist letter dated January 30, 2007, that I sent to your client and we are still holding all proof. Moreover, your client admitted to me personally the infringement act, since I conducted the negotiation with your to reach an amicable solution, as per my client's preference to keep the good relationship, rather than prosecuting your client as per the UAE applicable Laws;

**Middle East**
Bahrain
Gaza Strip
Iraq
Jordan
Kuwait
Lebanon
Oman
Qatar
Saudi Arabia
Syria
UAE
West Bank
Yemen

**Africa**
Algeria
Angola
ARIPO
Djibouti
DR Congo
Egypt
Ethiopia
Ghana
Kenya
Libya
Madagascar
Morocco
Mozambique
Nigeria
OAPI
Rwanda
Senegal
South Africa
Sudan
Tanzania
Tunisia
Zambia
Zanzibar

**Asia**
Afghanistan
Bangladesh
Brunei
Cambodia
China, PRC
India
Indonesia
Iran
Laos
Malaysia
Mongolia
Myanmar
Nepal
Pakistan
Sri Lanka
Vietnam

**Europe**
Albania
Belarus
Bosnia
Bulgaria
Croatia
Cyprus
Czech Rep.
Kosovo
Macedonia
Moldova
Montenegro
Romania
Serbia
Slovakia
Slovenia
Turkey

12687.107.971.13

CORPORATE OFFICE
2011 PRISME TOWER, BUSINESS BAY, P.O.BOX 14018, DUBAI, UAE   TEL +971-4 335 5844   FAX   9714 335 5899   mrz@siplegal.com
www.siplegal.com

3) Despite my client's amicable approach in 2007, your client continued his actions to undermine the business relationship between them, for example:

   a)  Your client started manufacturing similar items to our client's products and was selling them to competitors;

   b)  Your client started manufacturing similar items to our client's products under his brands, among them "Daily Fresh";

   c)  Your client started selling items copying our client's labels under the brand "Global Choice";

   d)  Your client has engaged in selling and marketing our client's products in the UAE.

4) Since 2007, my client communicated with your client on many occasions regarding their performance, with the best intention to remedy my client's concerns. Your client's irresponsibility resulted in drop of sales, decline in primary and secondary business for various categories including loss of market shares. Your client ignored all concerns raised by my client.

5) Regarding your client's request that my client to settle pending debit notes of $1.8 million, my client is verifying tem to confirm the correct due amount and will be settling them in due course.

Thanking you for your kind attention, we remain

Very truly yours,
ST&P ATTORNEYS AND AGENTS
Joseph K. Gheriafi

JKG/vag

12687.107.971.13

**Exhibit D**
to Al Maya Trading Establishment's
Notice of Application for an Order
Directing Arbitration

## STIPULATION OF CONSENT TO ARBITRATION

**WHEREAS**, Al Maya Trading Establishment ("Al Maya") and Global Export Marketing Co. Ltd. ("Gemco") (individually, a "Party," and collectively, the "Parties") entered into a valid and binding written agreement, dated June 16, 1999 (the "Agency Agreement" or "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A;

**WHEREAS**, Article 9 of the Agreement contains a valid and binding arbitration provision (the "Arbitration Provision") that expressly provides for "final and binding" arbitration of "all disputes and or differences" that may "arise between the parties out of or in relation to or in connection with" the Agreement. *Id.*;

**WHEREAS**, there is an existing controversy between the Parties arising out of or in relation to or in connection with the Agreement relating to Gemco's termination of the Agreement, Al Maya's allegations of multiple material breaches thereof by Gemco, Al Maya's allegations of tortious conduct by Gemco in connection with said breaches of contract, and related allegations (the "Dispute"); and

**WHEREAS**, under the Arbitration Provision, arbitration of the Dispute must be conducted by a "practicing Auditor or Lawyer in internationally reputed Audit / law firm";

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned, that the Dispute must, and hereby shall, be resolved by final and binding arbitration, which shall be conducted by a "practicing Auditor or Lawyer in [an] internationally reputed Audit / law firm" with an office located within the Southern District of New York (the "Arbitrator"); and

**IT IS FURTHER STIPULATED AND AGREED**, by and between the undersigned, that the Parties will make a good faith effort to select and appoint the Arbitrator, in accordance with the terms of this Stipulation, by mutual agreement; and

**IT IS FURTHER STIPULATED AND AGREED**, by and between the undersigned, that if the Parties do not select and appoint the Arbitrator by mutual agreement within 30 days of

the date hereof, either Party may file an application under Section 5 of the FAA, 9 U.S.C. § 5, to the United States District Court for the Southern District of New York (the "Application for Appointment") for an order designating and appointing the Arbitrator, in accordance with the terms of this Stipulation; and

**IT IS FURTHER STIPULATED AND AGREED**, by and between the undersigned, that no Party will oppose, on any grounds whatsoever, an Application for Appointment filed by another Party in accordance with the terms of this Stipulation; and

**IT IS FURTHER STIPULATED AND AGREED**, by and between the undersigned, that the Parties consent to, and no Party will oppose, the jurisdiction of the Arbitrator, whether selected and appointed by mutual agreement of the Parties, or designated and appointed by a court, and that upon appointment the Arbitrator shall act under the Agreement and its Arbitration Provision with the same force and effect as if he or she had been specifically named therein.

This stipulation may be executed in counterparts, each of which shall be deemed an original, and signatures transmitted electronically or by facsimile shall be deemed originals.

Dated:  New York, New York
        January ____, 2014

GLOBAL EXPORT MARKETING CO.          AL MAYA TRADING ESTABLISHMENT
LTD.


By: _____          By: _____

    Name:                                Mitchell A. Karlan
    Title:                               GIBSON, DUNN & CRUTCHER LLP
    Address:                             200 Park Avenue
                                         New York, New York 10166

    E-mail:                              mkarlan@gibsondunn.com
    Telephone:                           Telephone: 212-351-3905

                                         *Attorneys for*
                                         AL MAYA TRADING
                                         ESTABLISHMENT

2

## AFFIDAVIT OF SERVICE

UNITED STATES DISTRICT COURT                    SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X
AL MAYA TRADING ESTABLISHMENT,                  Attorney:   Gibson Dunn & Crutcher LLP
                                                            200 Park Avenue
              Petitioner,                                   New York, NY 10166-0193
                                                            212-351-4000
       v.

GLOBAL EXPORT MARKETING CO., LTD.,

              Respondent.
-------------------------------------------------X

STATE OF NEW YORK, COUNTY OF NASSAU; ss:

The undersigned being duly sworn, deposes and says:

I, **Corey Guskin**, am not a party to this action, I am over 18 years of age, and I reside in the County of Nassau, in the State of New York.

That on Thursday, January 2, 2014 at 9:42 A.M. deponent **served** the within Notice of Application for an Order Directing Arbitration and Exhibits A through D

Upon:        **Global Export Marketing Co., Ltd.**        (212) 268 - 9930
Located at:   25 West 31st Street, 8th Floor, New York, New York 10001

### Limited Company Service:

A limited company, by delivering there at a true copy of the aforesaid documents to **Global Export Marketing Co., Ltd.,** personally, deponent knew said limited company so served to be the limited company described in said Notice of Application and knew said individual to be **Kevin Egan** – President, and the person in charge at the time of service, thereof and he stated that he was authorized to accept service of process for Global Export Marketing Co., Ltd.

Kevin Egan's Description: Caucasian, White Skin, Male, S & P Hair, 45 Years Old, Seated, 6' and 200 Lbs.


                                           Corey Guskin

                                           *[signature]*

                                           License # 1094475


Sworn to before me this 5th day of January, 2014

       *[signature]*

                                           ┌──────────────────────────────────────┐
                                           │            JOAN GUSKIN               │
                                           │   Notary Public, State of New York   │
                                           │          No. 01GU6230103             │
                                           │     Qualified in Nassau County       │
                                           │ Commission Expires November 01, 2014 │
                                           └──────────────────────────────────────┘
Notary Public

**Exhibit D**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014

**Sudeep Trehan**

| | |
|---|---|
| **From:** | Deepak Pagarani |
| **Sent:** | Monday, October 21, 2013 12:51 PM |
| **To:** | Ramzi Fawaz; Sudeep Trehan |
| **Subject:** | Fw: Discussions on Friday |

Empower your Business with BlackBerry® and Mobile Solutions from Etisalat

**From:** KEVIN EGAN <kevin@globalxport.com>
**Date:** Sat, 28 Sep 2013 15:37:16 +0400
**To:** Deepak Pagarani<deepakp@almaya.ae>; Ashok Purswani<ap@almaya.ae>
**Cc:** Fazal (morty@fazal.com)<morty@fazal.com>; Biju Panicker<BIJU@globalxport.com>; MAHESH
GOPALANI<mahesh@globalxport.com>
**Subject:** Discussions on Friday

Dear Deepak and Ashok, as requested Morty and I met again on Friday, I delayed flight till Saturday 3
AM Dubai ... Both very sorry ,but decision is final, all brands. It is your choice to keep stock, we are
willing to take good stock.  Biju and Mahesh would like to meet on Sunday to discuss stock turnover ,
Thank u,
Kind regards
Kevin
PS-  Biju and Mahesh  would be transition persons from our side.

1

**Exhibit E**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014

**Sudeep Trehan**

| | |
|---|---|
| From: | Deepak Pagarani |
| Sent: | Wednesday, October 02, 2013 8:06 PM |
| To: | Sudeep Trehan; Usha Bahirwani |
| Subject: | Fw: MEETING AGENDA  on 3rd Oct 2013 |

Empower your Business with BlackBerry® and Mobile Solutions from Etisalat

---

**From:** Biju Panicker <BIJU@globalxport.com>
**Date:** Wed, 2 Oct 2013 17:22:08 +0400
**To:** Ashok Purswani<ap@almaya.ae>
**Cc:** Deepak Pagarani <deepakp@almaya.ae>; KEVIN EGAN<kevin@globalxport.com>; Mohammed<mohammed@globalxport.com>; morty@fazal.com<morty@fazal.com>
**Subject:** MEETING AGENDA on 3rd Oct 2013

*Dear Ashokji*

Time is very crucial ( as most of us would be visiting Anuga) we need to arrive on some decisions. It was very important to have met today but since Ashokji , had to postpone this meeting to tomorrow , at 12pm in Al Maya HO.

During tomorrow's meeting we expect to have a conclusive answer on the following :-

1) Transition Of Stocks
   a. **Option 1:-**
      We, Gemco,  understand you, Al Maya, have around *50 days* of stock for AG , and cannot give you the full *50 days* to deplete these stocks. Given the current circumstances we can only  allow you to continue to service the trade for the next 20 days . We offer to buy back the good saleable stocks during this 20 days period and the transfer of stocks would start immediately. From  25th of October the new distributors will start dealing with the trade and therefore we cannot go beyond this time frame and even AL Maya would find it difficult to sell the stocks.
   b. **Option 2:-**
      *GEMCO* can buy back all good saleable stocks and the new distributors would start selling immediately.
   c. **Option3 :-**
      If both the above mentioned options are not found feasible , then we would not accept  any stock transfer/buy back and would offer AL Maya 20 days lead time , before the new distributor starts selling.

We are expecting a decision on one of the above Options in tomorrow's meeting , other technical aspects can be discussed and mutually agreed during the course of this meeting.

**Note :-** In the event of no conclusive response on any of the above mentioned Options in our meeting tomorrow , GEMCO will not accept any stocks/claims  from AL Maya . AL Maya can sell the stocks  till 25th October 2013  and after that the new distributor will take charge.

Regards
Biju Panicker
Business Development Manager- UAE & OMAN
GEMCO,NY,U.S.A

1

**Exhibit F**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014

 **gemco** Global Export Marketing Co., Ltd

October 6, 2013

Al Maya Group
PO Box 8476
Opposite Aramex, Airport Road
Al Garhoud, Dubai
United Arab Emirates

To Whom It May Concern:

This is to inform you that we, *Global Export Marketing Co., LTD*, have decided to terminate our business relationship with *Al Maya Group* in respect to products bearing our trademark *"American Garden"*, as per my and Mr. Morty Fazal's meeting with Mr. Ashok Purswani and Mr. Deepak Pagarani from *Al Maya Group* on the night of *Thursday September 26th, 2013* at the *Radison Royal Hotel*.

Please note that we will no longer supply you with *"American Garden"* products, therefore, you are no longer permitted marketing, selling or using our brand in anyway.

Please consider this Notice as a final termination of all our verbal or written agreements, if any.

Sincerely,

Kevin Egan
President

*Global Export Marketing Co., Ltd.*
*25W 31ˢᵗ Street, 8ᵗʰ Floor*
*NEW YORK, NY 10001 USA*
*TEL (212) 268-9930   FAX (212) 268-9935*

**Exhibit G**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014



October 8th, 2013

SUBJECT: APPOINTMENT OF AUTHORIZED
FOR 'RETAIL TRADE DEVELOPMENT'

Dear Valued Customer

In the capacity of
LTD.", with to
only. The authorized
Situated at Unit

You are requesting
Developing Ext

During this initial
"AMERICAN GAS
authorized to install

We solicit your request
support to you.

Thank you.

Sincerely yours,

for
Kevin Egan
President

**Exhibit H**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014



**AL MAYA TRADING EST.**

مـؤسسـة المـايـا للـتجارة
ص.ب:8476، ديـرة، دبـي، أ.ع.م، تـليـفـون:2822555-04 فـاكـس:
04-6062826، P.O.BOX: 8476, DEIRA, DUBAI, (U.A.E), TEL: 04-2822555, FAX: 04-2826660
ESTABLISHED IN 1991 1991 تأسست عام

9th October 2013

**Global Export Marketing Co. Ltd.**

25 West 31st Street, 8th Floor
New York, NY 10001,
USA

Tel: +212-2689930
Fax : +212-2689935

kevin@globalxport.com

WITHOUT PREJUDICE

Attention to: Mr Kevin Egan - President

Re: Breaching of Exclusive Distribution Agreement

Dear Mr Egan,

We refer to the meeting held in our offices in Dubai with your team on 3rd October 2013 in relation to the Exclusive Distribution Agreement signed in 1999 between yourself on behalf of Global Export Marketing Co Ltd and Al Maya Trading Est. ("the Agreement") for the exclusive distribution and promotion of the American Garden branded items ("the merchandise") in the entire territory of the UAE ("the designated territory").

Based on the aforementioned, we stress the following points:

1. You are no doubt aware that our company as the exclusive distributor for the UAE market for the American Garden products has invested several millions of dirham in the promotion and distribution of the American Garden brand and range of products. In addition our company invested tremendous efforts in the UAE market to develop and build-up the American Garden brand and range of products for the last 25 years in local and regional markets, including but not limited to appointing efficient sales team, buying vehicles for distribution, creating the infrastructure in order to grow the range of product in the designated territory and marketing the products with key retailers.

1

2. You are aware that as per the Agreement, you are not allowed to supply any other entity in the designated territory as this constitutes a violation of our Agreement. As well, appointing a third party as a distributor for the merchandise in the designated territory is considered as a breach of contract. Therefore, by virtue of the Agreement, we ask you to immediately stop dealing with any third party as we are the exclusive distributor for the merchandise in the designated territory.

3. We have noticed that you are attempting to unilaterally terminate our Agreement which constitutes a violation of our contractual terms and acquired rights in the local laws. We would like to inform you that as per the UAE Laws and regulations, the termination of a contract is not valid unless it is consensual (both parties agree to terminate); statutory (i.e. termination under a provision of the law); or judicial (where termination is effected by a court order). Furthermore, termination of exclusively appointed agent and/or distributor is illegal and exposes the violating party to serious legal sanctions and remedies. Thus, we confirm that our Agreement is still valid and binding and any conduct in contradiction with the provisions of our Agreement is considered as a breach and will entitle us to seek compensation and claim damages.

4. Therefore, as our agreement is still valid, we request that you immediately supply us with the pending orders, namely the merchandise ordered since July 2013 onwards. It is your obligation to supply us based on our rights as exclusive distributor for the merchandise in the designated territory. Further, we would like to inform you that the stocks we currently have in our warehouse are adequate to approximately meet the market demand for the next two months only. Thus, if the pending orders are not shipped shortly to us, it will lead us to a financial loss and you will be held you responsible for this loss.

5. As per provision no. 5 of the Agreement, we kindly request that you clear the outstanding debit notes concerning our advertisements and promotions expenses. As you are aware, we have been spending for Ramadan promotions and others promotions on yearly basis, our debit notes of AED 5.8 Million have been raised for such promotions and have been sent to you for immediate settlement, (please see in Annexure 1 for your ease of reference). Some additional debit notes, currently under process will be provided to you at later stage of the year. We kindly advise you to bear in mind our arrangement for 30 days payment, these debit notes have been outstanding for a period in excess of 30 days.

6. You are no doubt aware that the above mentioned facts and your conduct constitute violations of our rights as the exclusive distributor of the merchandise in the designated territory. We are deeply shocked by your behavior and attempts to terminate our longstanding relationship without any ground. As you are now aware, termination of a contract in the UAE cannot be done via simple communications emails and requires a Court order. Thus, your conduct exposes you to legal sanctions and will undeniably allow us to claim compensation and seek damages. We reiterate that our Agreement is still valid and binding.

2

AL MAYA TRADING

As such, by virtue of the Agreement and as the as the exclusive distributor of the merchandise in the designated territory we request that you respond to us within 7 days from receipt of this legal notice confirming that you instructed your authorized representatives in the UAE that your company will immediately:

a) Continue to supply the merchandise exclusively to Al Maya Trading Est.;

b) Release the pending shipment ordered from July 2013 onwards;

c) Proceed with the settlement of outstanding Debit notes;

d) Inform traders in the UAE that we are the exclusive agent for the merchandise;

e) Prevent your representatives in Dubai from contacting other retailers within the UAE in an attempt to sell and market your products; and

f) Transfer any order/request received from traders and retailers in the UAE regarding purchase of the merchandise directly to our attention.

Accordingly, we request that you respond to us within 7 days from receipt of this legal notice confirming that you will immediately adhere with the contractual arrangements that we have between our companies and fulfill the above requests.

We have already provided a lot of efforts to sustain our longstanding relationship and find your unilateral conduct to jeopardize our exclusive rights should definitely contradict with all efforts put insofar. However, we reiterate on our good faith and Al Maya Trading management's willingness to resolve the commercial differences through the amicable business path.

Accordingly should you fail to comply with the above, we will have no other choice but take the necessary actions against any entity that violates our exclusive right before the competent courts, governmental and/or boarders authorities.

This is without prejudice to our legal rights at any stage and we reserve our company's right to claim any damages occurred due to your conduct.

Best regards,

**Al Maya Trading Est**

_____

**Mohammad Essa Mohd. Al Samt**

**Owner**

Annexure

## AMERICAN GARDEN & DIAMOND FOIL OUTSTANDING DEBIT NOTES AS OF 30TH SEPTEMBER '13

(Amount in AED)

| Sr. No. | Debit Note Nos. | Debit Note Date | Gross Amount in AED | Open Amount in AED | Remark |
|---|---|---|---|---|---|
| | | American Garden (Global Export Marketing Co Ltd) | | | |
| 1 | 12027 | 25/01/12 | 49,045 | 2,916 | DN:12027_NR EXPRY_KBLR_LODATED |
| 2 | 12242 | 25/08/12 | 11,461 | 4,103 | DN_12242_PROMO PK AG CHN_AUG12 |
| 3 | 12334 | 11/11/12 | 18,400 | 18,400 | DN:12334_PRC DIF_AG MYNS_G/FRK |
| 4 | 12391 | 26/12/12 | 1,000 | 1,000 | DN:12391_KBLR DSPLY_CHOTRM KH |
| 5 | 12404 | 31/12/12 | 10,000 | 10,000 | DN:12404_A/G DSPLY_19.12-01.01 |
| 6 | 12418 | 31/12/12 | 42,500 | 42,500 | DN:12418_RMDN PROM ACTVTY_JUL |
| 7 | 13031 | 31/01/13 | 15,000 | 15,000 | DN:13031_A/G DSPLY_ALAIN COP S |
| 8 | 13043 | 14/02/13 | 31,044 | 31,044 | DN:13043_TRD DL_A/G MYNS_JAN13 |
| 9 | 13163 | 23/05/13 | 145,620 | 145,620 | DN:13163_FXD RNTL_A/G_APR-MAY |
| 10 | 13164 | 23/05/13 | 119,999 | 119,999 | DN:13164_PRC DIF_A/G PROMO@CNF |
| 11 | 13165 | 23/05/13 | 6,431 | 6,431 | DN:13165_GDS DMGD_AG FRNCH DRS |
| 12 | 13166 | 23/05/13 | 31,183 | 31,183 | DN:13166_TRD DEAL_A/G_APR'13 |
| 13 | 13183 | 19/06/13 | 579 | 579 | DN:13183_3%PRC SUPPRT_A/G PDTS |
| 14 | 13184 | 19/06/13 | 150,120 | 150,120 | DN:13184_FXD RNTL CHG_A/G_MAY |
| 15 | 13185 | 19/06/13 | 34,153 | 34,153 | DN:13185_PRC DIF_A/G PROMOTNS |
| 16 | 13186 | 19/06/13 | 38,315 | 38,315 | DN:13186_A/G_DSPLY_MAY PROMOTN |
| 17 | 13187 | 19/06/13 | 4,000 | 4,000 | DN:13187_EPPCO STATN DSPLY_AG |
| 18 | 13188 | 19/06/13 | 42,618 | 42,618 | DN:13188_TRD DEAL_A/G MAYO_MAY |
| 19 | 13225 | 15/07/13 | 27,076 | 27,076 | DN:13225_PRC SUPP A/G BBQ_EXPR |
| 20 | 13233 | 15/07/13 | 2,720 | 2,720 | DN:13233_PRC SUPP_A/G_EXPRY DT |
| 21 | 13234 | 22/07/13 | 151,945 | 151,945 | DN:13234_FXD RNTAL_A/G_JUN'13 |
| 22 | 13235 | 22/07/13 | 666,741 | 666,741 | DN:13235_PRC DIF_RMDN PROMO_AG |
| 23 | 13236 | 22/07/13 | 15,750 | 15,750 | DN:13236_A/G PROM DSPLY_LULU E |
| 24 | 13237 | 22/07/13 | 4,000 | 4,000 | DN:13237_EPCON DISP STND_MWPC |
| 25 | 13238 | 22/07/13 | 33,515 | 33,515 | DN:13238_TRD DEAL_A/G MAYO_JUN |
| 26 | 13239 | 22/07/13 | 1,881 | 1,881 | DN:13239_TRD DEAL_A/G_GRAPE LVS_JU |
| 27 | 13269 | 14/08/13 | 55,000 | 55,000 | DN:13269_PROMO DSPLY_A/G_LULU |
| 28 | 13280 | 20/08/13 | 1,128,414 | 1,128,414 | DN:13280_RMDN DSPLY_A/G PDTS |

MAYA TRADING EST.

1

**AMERICAN GARDEN & DIAMOND FOIL OUTSTANDING DEBIT NOTES AS OF 30TH SEPTEMBER '13**

(Amount in AED)

| Sr. No. | Debit Note Noc | Debit Note Date | Gross Amount in AED | Open Amount in AED | Remark |
|---|---|---|---|---|---|
| 29 | 13286 | 22/08/13 | 10,324 | 10,324 | DN:13286_ADDTNL DSPLY_A/G PDTS |
| 30 | 13287 | 22/08/13 | 57,000 | 57,000 | DN:13287_ADVT ACTV_A/G PD_RMDN |
| 31 | 13288 | 22/08/13 | 160,000 | 160,000 | DN:13288_RNTL CHG_AG_RMDN_LULU |
| 32 | 13289 | 22/08/13 | 173,445 | 173,445 | DN:13289_RNTL CHG_A/G P_JUL'13 |
| 33 | 13290 | 22/08/13 | 519 | 519 | DN:13290_PRC SUPP_A/G PCKL HMB |
| 34 | 13291 | 22/08/13 | 84,915 | 84,915 | DN:13291_PRC SUPP_A/G PINEAPPL |
| 35 | 13292 | 22/08/13 | 240,243 | 240,243 | DN:13292_PRC DIFF_A/G PROM PCK |
| 36 | 13293 | 22/08/13 | 5,000 | 5,000 | DN:13293_PCKG_A/G POPCRN_UNIC |
| 37 | 13294 | 22/08/13 | 4,000 | 4,000 | DN:13294_A/G DSPLY_EPPCO OUTLT |
| 38 | 13301 | 28/08/13 | 12,250 | 12,250 | DN:13301_PRICE SUPP_A/G SALT |
| 39 | 13302 | 28/08/13 | 88,480 | 88,480 | DN:13302_FOC DEAL_GRAPE LV BKT |
| 40 | 13320 | 11/09/13 | 48,300 | 48,300 | DN:13320_DMRG&MONITRNG CH_MYNS |
| 41 | 13322 | 15/09/13 | 5,657 | 5,657 | DN:13322_SHRTG&DAMG_A/G_1&2QTR |
| 42 | 13323 | 15/09/13 | 6,600 | 6,600 | DN:13323_SHPNG/PORT DMRG_MAYNS |
| 43 | 13328 | 17/09/13 | 78,655 | 78,655 | DN:13328_PRC DIFF_A/G PDTS_AUG |
| 44 | 13330 | 17/09/13 | 28,064 | 28,064 | DN:13330_TRD DEAL_A/G_JUL'13 |
| 45 | 13331 | 17/09/13 | 85,200 | 85,200 | DN:13331_TRD DEAL_A/G PDTS_AUG |
| 46 | 13332 | 17/09/13 | 1,695 | 1,695 | DN:13332_SPCL INCNTV_GRAPE LVE |
| 47 | 13333 | 17/09/13 | 5,660 | 5,660 | DN:13333_SPCL INCNTV_CRND BEEF |
| 48 | 13334 | 17/09/13 | 158,145 | 158,145 | DN:13334_RENTAL CHG_A/G_AUG'13 |
| 49 | 13335 | 17/09/13 | 4,000 | 4,000 | DN:13335_DSPLY STNDS_EPPCO 20 |
| 50 | 13336 | 17/09/13 | 37,649 | 37,649 | DN:13336_PRC SUPRT_CORNED BEEF |
| 51 | 13337 | 17/09/13 | 9,500 | 9,500 | DN:13337_ADDTNL PROMO_A/G PDTS |
| 52 | 13338 | 17/09/13 | 183,250 | 183,250 | DN:13338_BCK TO SCHOOL SUP_AUG |
| 53 | 13339 | 17/09/13 | 2,370 | 2,370 | DN:13339_TOMATO PURE_NO EXP DT |
| | Total- American Garden | | | 4,275,944 | |
| | Diamond Foil (Zams International) | | | | |
| 1 | 13042 | 14/02/13 | 14,122 | 14,122 | DN:13042_TRD DL_DMND FL_JAN'13 |
| 2 | 13240 | 22/07/13 | 70,200 | 70,200 | DN:13240_FXD RNT_D/FOIL_JUN'13 |
| 3 | 13241 | 22/07/13 | 412,905 | 412,905 | DN:13241_PRC DIFF PROM_D/FOIL |

## AMERICAN GARDEN & DIAMOND FOIL OUTSTANDING DEBIT NOTES AS OF 30TH SEPTEMBER '13

(Amount in AED)

| Sr. No. | Debit Note No: | Debit Note Date | Gross Amount In AED | Open Amount in AED | Remark |
|---|---|---|---|---|---|
| 4 | 13242 | 22/07/13 | 11,013 | 11,013 | DN-13242_TRD DEAL_D/FOIL_MAY13 |
| 5 | 13270 | 14/08/13 | 35,000 | 35,000 | DN-13270_PRMO DISP_D/FOIL_LULU |
| 6 | 13275 | 20/08/13 | 12,000 | 12,000 | DN-13275_ADDTNL DSPLY_D/FOIL P |
| 7 | 13276 | 20/08/13 | 94,600 | 94,600 | DN-13276_RNTL CHG_D/FOIL_JUL13 |
| 8 | 13277 | 20/08/13 | 144,256 | 144,256 | DN-13277_PRC DIF_D/FOIL PROMO |
| 9 | 13278 | 20/08/13 | 90,000 | 90,000 | DN-13278_RMDN DSPLY_D/FOIL_LUL |
| 10 | 13279 | 20/08/13 | 514,886 | 514,886 | DN-13279_RMDN DSPLY_D/FOIL PDT |
| 11 | 13325 | 17/09/13 | 15,936 | 15,936 | DN-13325_TRD DEAL_D/FOIL_JUL13 |
| 12 | 13326 | 17/09/13 | 4,794 | 4,794 | DN-13326_TRD DEAL_D/FOIL_AUG13 |
| 13 | 13327 | 17/09/13 | 75,850 | 75,850 | DN-13327_RENTAL CHG_D/FOIL_AUG |
| 14 | 13329 | 17/09/13 | 9,651 | 9,651 | DN-13329_PRC DIFF_D/FOIL_AUG13 |
| 15 | 13341 | 19/09/13 | 50,625 | 50,625 | DN-13341_BD/BRANDING/VSBLTY AG |
| Total- Diamond Foil | | | | 1,555,839 | |
| Grand-Total (American Garden+Diamond Foil) | | | | 5,831,783 | |

### American Garden & Diamond Foil Outstanding debit notes ageing as of 30th Sep'13

(Amount in AED)

| Sr. No. | Customer Name | 0-30 | 31-60 | 61-90 | 91-120 | Over 120 | Total |
|---|---|---|---|---|---|---|---|
| 1 | American Garden (Global Export) | 654,745 | 2,019,590 | 903,628 | 269,785 | 428,195 | 4,275,944 |
| 2 | Diamond Foil (Zams International) | 156,856 | 890,743 | 494,118 | - | 14,122 | 1,555,839 |
| Total | | 811,601 | 2,910,333 | 1,397,746 | 269,785 | 442,317 | 5,831,783 |

Note: Approx. AED 1.1 Million of debit note are pending to be raised against Fixed rentals for the period Sept to Dec'13

| Amount Overdue over 30 Days | 5,020,181 |
|---|---|

3



دايـنـامـك
للترجمة والخدمات المكتبية

*Dynamic*
*Translation & Office Services*

ترجمـة قانونيـة
Legal Translation

التاريخ : ٩ أكتوبر ٢٠١٣

إلى    : جلوبال اكسبورت ماركتينغ كو ليمتد
العنوان : ٢٥ ويست شارع ٣١، الطابق الثامن
نيويورك – ١٠٠٠١
الولايات المتحدة الأمريكية

هاتف  : ٢٦٨٩٩٣٠ ٢١٢+
فاكس  : ٢٦٨ ٩٩٣٥ ٢١٢+
البريد الإلكتروني: kevin@globalxport.com

عناية : السيد كيفن إيغان – الرئيس                                            مع عدم الإخلال

الموضوع    : <u>**الإخلال بأحكام اتفاقية التوزيع الحصرية**</u>

السيد / إيغان

تحية وبعد ...

بالإشارة إلى الاجتماع المنعقد في مكتبنا الكائن في دبي مع مسؤوليكم بتاريخ ٣ أكتوبر ٢٠١٣
فيما يتعلق باتفاقية التوزيع الحصرية الموقعة عام ١٩٩٩ معكم بالنيابة عن شركة جلوبال
اكسبورت ماركتينغ كو ليمتد وبين مؤسسة المايا للتجارة (يشار إليها فيما يلي بلفظ "الاتفاقية")
التي تنص على قيام شركة المايا بشكل حصري بتوزيع وبيع المنتجات التي تحمل العلامة

أشهد أنا الموقع على هـذا المستند، بصـفتي مترجماً قانونياً مرخصـاً من وزارة العـدل ، بـأن الترجمة المرفقـة صحيحة ومطابقة للنص الأصـلي
I, the signatory to this document, as a legal translator duly licensed and sworn in by the Ministry of
Justice, do hereby certify that the enclosed translation is correct and identical to the original text.

U.A.E.   ABU DHABI      Tel. : 02-6424002  –  Fax : 02-6424003  –  P.O.Box : 8096
         DUBAI          Tel. : 04-2809494  –  Fax : 04-2809669  –  P.O.Box : 33659





دايـنامـك
للترجمة والخدمات المكتبية

ترجمة قانونية
Legal Translation

التجارية "أمريكان جاردنز" (يشار إليها فيما يلي بلفظ "السلع") في جميع أنحاء دولة الإمارات بالكامل (يشار إليها فيما يلي بعبارة "الإقليم المحدد").

وعليه فإنه بناءً على ما ورد أعلاه، فإننا نؤكد على النقاط التالية:

1- مما لاشك فيه، فإنكم تدركون بشكل قاطع أن شركتنا بصفتها الموزع الحصري لمنتجات أمريكان جاردنز في السوق الإماراتي، فقد قامت باستثمار ملايين الدراهم في ترويج وتوزيع المنتجات التي تحمل العلامة والخصائص التجارية "أمريكان جاردنز". كما قامت شركتنا ببذل قصارى جهدها وأفضل مساعيها في السوق الإماراتي لتوسعة نطاق وبناء سمعة جيدة لتلك المنتجات التي تحمل العلامة التجارية "أمريكان جاردنز" على مدار السنوات الخمسة والعشرين الماضية في الأسواق المحلية والإقليمية، بما في ذلك ولا يقتصر على تعيين فريق مبيعات بكفاءات ومؤهلات عالية وشراء سيارات لتوزيع وبناء بنية تحتية للعمل على إنماء مجموعة المنتجات في الإقليم المحدد وتسويق المنتجات لدى كبار بائعي التجزئة.

2- كما تدركون أيضاً أنه حسب ما تنص على الاتفاقية، فإنه لا يسمح لكم توريد أي من تلك المنتجات المشار إليها لأي جهة أخرى في الإقليم المحدد، لأن ذلك يشكل انتهاكاً وخرقاً للاتفاقية المبرمة فيما بيننا. وكذلك تعيين طرف آخر بوصفه موزع لتلك السلع في الإقليم المحدد يعتبر إخلالاً بالعقد. وعليه فإنه بموجب الاتفاقية، نطالبكم على الفور بوقف التعامل مع أي طرف آخر، وذلك لأننا الموزع الحصري للسلع في الإقليم المحدد.

أشهد أنا الموقع على هذا المستند، بصفتي مترجماً قانونياً مرخصاً من وزارة العدل ، بأن الترجمة المرفقة صحيحة ومطابقة للنص الأصلي
I, the signatory to this document, as a legal translator duly licensed and sworn in by the Ministry of Justice, do hereby certify that the enclosed translation is correct and identical to the original text.

U.A.E.   ABU DHABI     Tel. : 02-6424002  —  Fax : 02-6424003  —  P.O.Box : 8096
         DUBAI          Tel. : 04-2809494  —  Fax : 04-2809669  —  P.O.Box : 33659





ترجمـة قانونيـة
Legal Translation

دايـنـامـك
للترجمة والخدمات المكتبية

٣- لقد نما إلى علمنا أنكم حاولتم إنهاء الاتفاقية المبرمة فيما بيننا من جانب واحد ضاربين بأحكامها عرض الحائط، الأمر الذي يشكل انتهاكاً وإخلالاً بشروطنا التعاقدية وحقوقنا المكتسبة التي تحفظها لنا القوانين المحلية.   كما نود إخطاركم أنه حسب القوانين واللوائح المطبقة في دولة الإمارات العربية المتحدة، فإن إنهاء العقد لا يكون نافذاً، ما لم يكن ذلك بالتراضي بين طرفيه، او بموجب القانون (أي أن يكون الإنهاء بموجب حكم قانوني) أو بشكل قضائي (كأن يتم الإنهاء بموجب حكم قضائي صادر عن المحكمة). ناهيك عن ان إنهاء العلاقة مع أي وكيل و/أو موزع معين حصرياً يكون غير قانوني ويعرض الطرف المخل لعقوبات قانونية كبيرة بالإضافة إلى الحقوق الانتصافية التي تترتب عليه. لذا فإننا نؤكد على أن الاتفاقية المبرمة فيما بيننا لا تزال سارية وملزمة وأن أي تصرف يتعارض مع أحكام الاتفاقية وشروطها سيعتبر خرقاً وانتهاكاً، وسيخولنا بحق مطالبتكم بتعويضات وما تكبدناه من أضرار.

٤- لذا، فإنه بما أن الاتفاقية المبرمة فيما بيننا لا تزال سارية وكاملة القوة والأثر، فإننا نطالبكم بتزويدنا على الفور بالطلبيات المعلقة التي تتمثل في السلع التي طلبناها منذ يوليو ٢٠١٣  وما بعده. حيث يعد لزاماً عليكم تزويدنا بتلك السلع لما تقتضيه حقوقنا بصفتنا موزع حصري للسلع في الإقليم المخصص. عطفاً على ذلك، فإننا نود إخطاركم بأن المخزون الموجود حالياً بمخازننا كافٍ إلى حد ما لتلبية طلب السوق للشهرين القادمين فقط. ومن ثم، إذا لم يتم شحن الطلبيات المعلقة في أقرب وقت إلى إلينا، فسوف يؤدي ذلك إلى تكبيدنا خسائر مالية، وستكونون وحدكم المسؤولون عنها.



أشهد أنا الموقع على هـذا المسـتند، بصـفتي مترجمـاً قانونيـاً مرخصاً من وزارة العـدل ، بأن الترجمة المرفقة صحيحة ومطابقة للنـص الأصـلي
I, the signatory to this document, as a legal translator duly licensed and sworn in by the Ministry of Justice, do hereby certify that the enclosed translation is correct and identical to the original text.

U.A.E.   ABU DHABI      Tel. : 02-6424002  – Fax : 02-6424003  – P.O.Box : 8096
         DUBAI          Tel. : 04-2809494  – Fax : 04-2809669  – P.O.Box : 33659



**Dynamic**
*Translation & Office Services*

ترجمـة قانونيـة
*Legal Translation*

دايـنـامـك
للترجمة والخدمات المكتبية

٥- وبما يتوافق مع أحكام البند الخامس من الاتفاقية، فإننا نطالبكم بتسوية إشعارات المدين
العالقة فيما يتعلق بنفقات الإعلانات والترويج. وكما تعلمون فإننا قمنا بالإنفاق على
عروض رمضان والعروض الأخرى على أساس سنوي، ولقد بلغت إشعارات المدين
الخاصة بنا ٥,٨ مليون درهم على تلك العروض ولقد أرسلناها إليكم لتسويتها على
الفور (يرجى الاطلاع على الملحق رقم ١ لسهولة الرجوع لتلك الإشعارات). كما أن
هناك حسب الملحق المرفق، بعض إشعارات المدين الإضافية، لا تزال قيد الإعداد،
وسيتم إرسالها إليكم في وقت لاحق خلال هذه السنة. وعليه فإننا نخطركم باتخاذ ما
يلزم بشأن دفعاتنا وسدادها خلال ٦٠ يوماً، علماً بأن إشعارات المدين هذه لم يتم سدادها
ومعلقة منذ ما يزيد عن ٦٠ يوماً.

٦- كما إنكم تدركون جيداً أن جميع ما سلف حقائق واقعية وأن تصرفكم يشكل انتهاكاً
وإخلالاً بحقوقنا بوصفنا الموزع الحصري للسلع في الإقليم المحدد. ولقد انتابتنا الدهشة
من سلوككم وتصرفكم ومحاولتكم إنهاء علاقتنا طويلة الأمد دون أي أسباب تتفقون
عليها. وكما تعلمون حالياً، فإن إنهاء العقد في الإمارات العربية المتحدة لا يمكن
إجراؤه من خلال عدة مراسلات بسيطة ويتطلب أمر محكمة. ومن ثم فإن هذا
التصرف يعرضكم لعقوبات قانونية ويخولنا بدون شك بالمطالبة بالتعويض والسعي
للحصول على ما تكبدناه من أضرار. وعليه نؤكد مرة ثانية بأن الاتفاقية لاتزال
سارية وملزمة.

وبناءً على ما تقدم وبموجب الاتفاقية وبصفتنا الموزع الحصري للسلع في الإقليم المحدد، فإننا
نطالبكم بالرد علينا خلال ٧ أيام من تاريخ هذا الإشعار القانوني وتؤكدون بأنكم قد أصدرتم

أشهد أنا الموقع على هـذا المسـتند، بصـفتي مترجماً قانونياً مرخصاً من وزارة العـدل
.... صحيحة ومطابقة للـنص الأصـلي

I, the signatory to this document, a legal translator duly licensed and sworn in by the Ministry of
Justice, do hereby certify that the enclosed translation is correct and identical to the original text.

U.A.E.   ABU DHABI
DUBAI

Tel. : 02-6424002   –   Fax : 02-6424003   –   P.O.Box : 8096
Tel. : 04-2809494   –   Fax: 04-2809669   –   P.O.Box : 33659



*Dynamic*
*Translation & Office Services*

ترجمـة قانونيـة
*Legal Translation*

دايـنـامـك
للترجمة والخدمات المكتبية

تعليماتكم لممثليكم المفوضين في الإمارات العربية المتحدة بأن شركتكم ستقوم على الفور بما يلي:

أ- الاستمرار في توريد البضائع بشكل حصري لمؤسسة المايا التجارية.

ب- إصدار الشحنات المعلقة المطلوبة منذ يوليو ٢٠١٣ وما بعده.

ج- المضي قدماً في تسوية إشعارات المدين المعلق.

د- إخطار التجار في الإمارات العربية المتحدة بأننا الوكيل الحصري للسلع.

هـ- منع ممثليكم في دبي من الاتصال بتجار التجزئة الآخرين داخل الإمارات العربية المتحدة محاولة منهم لبيع وتسويق منتجاتكم.

و- تحويل أي طلبية / طلب مستلم من التجار وتجار التجزئة في الإمارات العربية المتحدة فيما يتعلق بشراء السلع مباشرة لنا.

ووفقاً لذلك، فإننا نطالبكم بالرد علينا خلال ٧ أسام من تاريخ استلام هذا الإشعار القانوني، وتؤكدون بأنكم ستلتزمون على الفور بالتزاماتكم التعاقدية المبرمة بين شركتينا والوفاء بطلباتنا المذكورة أعلاه.

لقد قمنا بالفعل ببذل قصارى جهدنا للحفاظ على وإدامة العلاقة طويلة الأمد القائمة بيننا، ووجدنا أن سلوككم الأحادي سيعرض حقوقنا الحصرية للخطر، الأمر الذي يتعارض بكل تأكيد مع كافة الجهود المبذولة حتى تاريخه. وعليه فإننا نؤكد مراراً وتكراراً على حسن نيتنا وعلى رغبة إدارة المايا للتجارة لتسوية الخلافات التجارية من الحلول الودية والعملية.

أشهد أنا الموقع على هذا المستند، بصفتي مترجماً قانونياً مرخصاً من وزارة العدل، بأن الترجمة مصححة ومطابقة للنص الأصلي

**I, the signatory to this document, as a legal translator duly licensed and sworn in by the Ministry of Justice, do hereby certify that the enclosed translation is correct and identical to the original text.**

U.A.E.   ABU DHABI   Tel. : 02-6424002  –  Fax : 02-6424003  –  P.O.Box : 8096
DUBAI   Tel. : 04-2809494  –  Fax : 04-2809669  –  P.O.Box : 33659

  داينـامـك
للترجمة والخدمات المكتبية

ترجمـة قانونيـة
Legal Translation

لذا، فإنكم في حال عدم الالتزام بما ورد أعلاه، فلن يكن أمامنا أي خيارات أخرى، إلا اللجوء للإجراءات القانونية ضد أي كيان ينتهك حقوقنا الحصرية أمام المحاكم المختصة والجهات الحكومية و/أو المعنية.

هذا مع عدم الإخلال بحقوقنا القانونية في أي مرحلة ونحتفظ بحق شركتنا للمطالبة بأي أضرار قد تحدث بسبب تصرفكم.

وتفضلوا بقبول وافر التحية والتقدير
مؤسسة المايا التجارية

ـــــــــــــــــــــــــــ

محمد عيسى محمد السمت
المالك

تنويه: لتصديق هذه الترجمة لدى وزارة العدل يتطلب إبراز النص الأصلي مصدقاً حسب الأصول.
DXB01V1310-225



أشهد، أنا الموقع على هـذا المستند، بصـفتي مترجماً قانونياً مرخصاً من وزارة العـدل ، بـأن الترجمـة المرفقـة صـحيحة ومطابقـة للـنص الأصـلي
I, the signatory to this document, as a legal translator duly licensed and sworn in by the Ministry of Justice, do hereby certify that the enclosed translation is correct and identical to the original text.

U.A.E.   ABU DHABI        Tel.: 02-6424002   –   Fax: 02-6424003   –   P.O.Box: 8096
         DUBAI            Tel.: 04-2809494   –   Fax: 04-2809669   –   P.O.Box: 33659

**Exhibit I**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014



**Global Export
Marketing Co., Ltd**

Al Maya Trading EST.
P.O. Box 8476
Deira, Dubai
United Arab Emirates

Today's Date: October 15, 2013

Dear Mr. Mohammad Essa Mohd. Al Samt,

We refer to your letter dated October 9, 2013
1) We did not sign any valid exclusive distributorship with your company
2) As per our rights we will continue to supply to whoever we chose to supply as part of our business interests and requirements
3) Our termination has not been unilateral. Based on the business relationship we have had, we have on several occasions verbally and in writing made you aware of our dissatisfaction with your performance, etiquette, target failures and non-achievement of various KPIs that were agreed to and suggested remedial actions. These were never acted upon by you.
4) As per our letter dated October 6, 2013, we consider our relationship terminated and will not supply any product to your company going forward.
5) Debit notes raised for expenses that were approved in writing by our company will be paid as we have done in the past. Only expenses approved thru September 30, 2013 will be considered if approved in writing. No expenses incurred after October 1, 2013 will be honored.
6) As courtesy, we are informing you that we will continue to supply to our customers and the trade as per our business requirements.
7) We would further expect that you will in no way attempt to harm the image or the business of American Garden in the UAE or other export markets by deception, price reductions, trade hindrance and trade mark violation. If found to do so, we will hold you fully responsible for any financial or business losses.

Since you feel that we are in violation of UAE laws, going forward, please channel all your communications through our attorney, Mr. Joseph Gheriafi, PO Box 14848, Dubai, U.A.E
uae@stplegal.com

Sincerely,

Kevin Egan
President

*Global Export Marketing Co., Ltd.*
*25W 31st Street, 8th Floor*
*NEW YORK, NY 10001 USA*
*TEL (212) 268-9930  FAX (212) 268-9935*

**Exhibit J**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mitchell A. Karlan
Telephone: (212) 351-3827
Facsimile: (212) 351-5254
mkarlan@gibsondunn.com

October 31, 2013

<u>VIA ELECTRONIC MAIL</u>

Mr. Joseph Gheriafi
ST&P Attorneys and Agents
P.O. Box 14848
Dubai, U.A.E.
uae@stplegal.com

Re:   <u>Breach of Agency Agreement by Global Export Marketing Co. Ltd.</u>

Dear Mr. Gheriafi:

We represent Al Maya Trading Establishment ("Al Maya"), which for many years has served as your client Global Export Marketing Co. Ltd.'s ("Gemco") exclusive distributor for American Garden branded products in the United Arab Emirates, pursuant to an Agency Agreement (the "Agreement") entered into between Al Maya and Gemco on June 16, 1999 (attached hereto as Exhibit A).

Among other relevant provisions, the Agreement appoints Al Maya as Gemco's "Sole Agent" and "Exclusive Distributors" for American Garden branded products "for the entire territory of the UAE" (Article 2), specifically prohibits Gemco from selling American Garden products to the U.A.E. "through any channels" other than through Al Maya (Article 4), and directs that Gemco "shall supply" American Garden products to Al Maya (Article 6). The Agreement most recently renewed "automatically" on June 16, 2013 for a period of two years (Article 8).

For approximately 25 years, Al Maya and Gemco have maintained a continuous, mutually beneficial relationship. Al Maya has promoted Gemco's American Garden products in the U.A.E., invested in infrastructure for the shipment and distribution of these products, hired a sales force devoted entirely to Gemco's products, and significantly developed the reputation of the American Garden brand in the region. As a result of Al Maya's efforts and significant investments in the brand, sales of American Garden branded products distributed by Al Maya have grown steadily over the life of the relationship, reaching approximately $27 million in 2012. Sales figures were expected to continue to increase, reaching projected sales of $42.5 million in 2015. In addition, Al Maya serves as the U.A.E. distributor for other Gemco brands; Al Maya sales of those brands totaled $9 million in 2012, and are projected to reach $12 million in 2015. In recognition of Al Maya's efforts and success, Gemco awarded Al Maya for their "Continuous Outstanding Partnership of 2 decades" in 2008, and has subsequently awarded Al Maya its "Distributor of the Year" award.

# GIBSON DUNN

Mr. Joseph Gheriafi
October 31, 2013
Page 2

However, it has come to our attention that Gemco has recently (and, in fact, for a period of years) flagrantly breached the Agreement in multiple, material respects, resulting in millions of U.S. dollars of damages to Al Maya.

In particular, Gemco has materially breached the Agreement in the following respects:

- At the end of September 2013, Gemco purported to unilaterally terminate the parties' relationship, despite the fact that the Agreement continues in full force and effect for a term of nearly two years, in accordance with Article 8 of the Agreement. Following a meeting between representatives of the two parties, on September 28 (less than 48 hours later), Gemco's CEO, Kevin Egan, wrote to Al Maya declaring that Gemco's decision to terminate the relationship was immediate and "final" and that the decision applied to "all brands."

- A few days later, on October 2, in violation of Articles 2 and 4 of the Agreement, Gemco's Biju Panicker informed Al Maya in writing that Gemco's "new distributor" would take charge on October 25, and purported to instruct Al Maya to stop selling American Garden products in the U.A.E. at that time.

- On October 6, 2013, Mr. Egan sent a purported notice of Gemco's "final termination of all our verbal and written agreements" to Al Maya. Mr. Egan informed Al Maya that Gemco would "no longer supply" it with American Garden products, in violation of Article 6 of the Agreement, and purported to forbid Al Maya from "marketing, selling or using [the American Garden] brand in anyway [sic]," again in violation of Articles 2 and 4.

- Gemco has failed to confirm or fulfill Al Maya's July and August 2013 orders, also in breach of Article 6 of the Agreement.

- For many years, Gemco has violated the Sole Agent and Exclusive Distributor provisions (Article 2 and 4) by selling American Garden branded products to Spire International L.L.C. for sale, distribution, or passage in or through the U.A.E.

In addition, on October 8, Gemco sent a letter to its customers in the U.A.E., notifying them of its purported "change" in supplier. In that letter, Gemco informed its customers that the "authorized distributor . . . shall be National Trading & Developing Establishment," which, Gemco said, is "presently servicing your account," and instructed its customers to "place all of your orders" through the purported new authorized distributor. This communication with Al Maya customers and the broader business community undermines and irreparably harms

# GIBSON DUNN

Mr. Joseph Gheriafi
October 31, 2013
Page 3

Al Maya's reputation and interferes with Al Maya's longstanding, ongoing, and valuable business and contractual relationships.

In light of Gemco's conduct, we demand that Gemco take the following immediate steps to remedy its breaches and make Al Maya whole:

(1) Immediately cease supplying American Garden branded products to National Trading & Developing Establishment, Spire International L.L.C., and any other companies that purchase, distribute, or transship American Garden products within or through the U.A.E.;

(2) Immediately renounce any agreements, whether verbal or written, between Gemco and any company other than Al Maya authorizing or otherwise relating to the purchase, distribution, or transshipment of American Garden products within or through the U.A.E.;

(3) Immediately recommence supplying American Garden branded products to Al Maya, in accordance with the Agreement;

(4) Immediately issue a letter to the recipients of Gemco's October 8, 2013 letter, in form and content acceptable to Al Maya, retracting the October 8 letter and stating that Al Maya always has been, and continues to be, Gemco's Sole Agent and Exclusive Distributor in the U.A.E.;

(5) Immediately pay Al Maya damages for lost profits resulting from Gemco's current and past breaches of the Agreement, amounts already incurred in connection with the breaches, and reputational loss in the marketplace resulting from GEMCO's reckless breach of the contract and its interference with Al Maya's contractual and business relationships; and

(6) Immediately pay any outstanding invoices owed to Al Maya, which are currently approximately $1.8 million.

If Gemco does not commit in writing by the close of business Eastern Standard Time on Tuesday, November 5, that it will cure its breaches of contract and make Al Maya whole by immediately taking the steps set forth above, Al Maya will have no choice but to commence appropriate legal action against Gemco.

Moreover, if Gemco does not immediately cure its breaches of the Agreement and pay damages to Al Maya, Al Maya reserves its right to seek, in addition to the damages outlined above, forward-looking damages for lost profits and other costs through the expiration of the

# GIBSON DUNN

Mr. Joseph Gheriafi
October 31, 2013
Page 4

Agreement on June 15, 2015, including costs associated with Al Maya's ongoing American Garden-related shipping, shelf space, salary, and other obligations, payment for Al Maya's inventory of American Garden merchandise, and compensation for the moneys invested by Al Maya in the American Garden brand.  We anticipate that these additional damages will exceed $50 million.

Al Maya and Gemco have maintained a continuous, mutually beneficial relationship for 25 years.  Al Maya has invested millions of dollars in the American Garden brand and wants nothing more than to repair and continue its relationship with Gemco for years to come. We hope that your client will see fit to resolve this dispute amicably so both parties can move forward together.  At the same time, Al Maya reserves all of its rights under the Agreement and governing law to take appropriate legal action.

Finally, please provide me with the name of the attorney Gemco is retaining in the United States so I can communicate with that person going forward.

Sincerely,

Mitchell A. Karlan

Enclosure

EXHIBIT A

## AGENCY AGREEMENT

This agreement is made on this 16th day of June 1999 by and between :

First Party
Global Export Marketing Co Ltd
11 Penn Plaza, Suite 1031
New York, NY 10001 , USA

Second Party
M/s Al Maya Trading Est.
P.O. Box 11096
Dubai
United Arab Emirates

PREAMBLE
Whereas the First Party is the manufacturer and or exporter of American Garden branded items, ( Hereinafter called " merchandise" ) and they are desirous of appointing Second party as their Sole Agent/ Exclusive Distributors

NOW THIS AGREEMENT WINTNESSETH AS UNDER:
01. The above preamble shall form an integral and indivisible part of this agreement.
02. The First party hereby appoints the Second party as their Sole Agent / Exclusive Distributors for the " merchandise" for the entire territory of UAE ( hereinafter called "the designated territory .")
03. The " Merchandise" covered under this agreement , American Garden branded items, manufactured, processed and or exported by the First Party from time to time.
04. The First Party shall not directly sell the " Merchandise " to the " designated territory" through any channels except the Second Party .
05. The Second Party agrees to promote sales of the " merchandise" supplied to them by the First party in the "designated territory" and to make arrangements for necessary advertisements and or promotions,etc. as may be mutually arid by and between the parties hereto from time to time.
06. The First Party shall supply to the Second party the " merchandise" at such price or prices as is / are mutually agreed between the parties.
07. The First Party hereby reserve all of its rights concerning the Trade marks , Brand Names and Designs of the " merchandise" except for the Second party being authorized to use the said Trade Marks and or Brand Names including Designs for the purpose of marketing the " merchandise " in its capacity as Agent/ Distributor of the " merchandise ."
08. This agreement shall remain valid for a period of two ( 2 ) years from the date herein above written in this Agreement and hall automatically renewed for equal period (s) unless either party informs the other in writing at least three ( 3 ) months in advance

of its intention to terminate this agreement. Either party reserves the right to terminate this arrangement by giving the other party clear three ( 3 ) months written notice of its intention to do so.

09. All disputes and or differences that may arise between the parties hereto out of or in relation to or in connection with this agreement or for any breach thereof shall be settled through arbitration by a practicing Auditor or Lawyer in internationally reputed Audit / law firm in accordance with the rules and regulations obtaining in the United Arab Emirates and the award given by the arbitrator shall be final and binding on both the parties.

IN WITNESS WHEREOF,  the parties hereto have signed this agreement on the day, month and year herein above written .

For and on behalf of


Global Export Marketing Co Ltd

For and on behalf of

Al Maya Trading Est.

THE JAMAICA CHAMBER OF COMMERCE
Organized in 1919 as The Merchants Association of Jamaica
NEW YORK STATE

GLOBAL EXPORT MARKETING CO., LTD.
ELEVEN PENN PLAZA, SUITE 1031
NEW YORK, N.Y. 10001
U.S.A.

P. O. Box  11095 Dubai
AL MAYA TRADING EST.

**Exhibit K**
to the Declaration of Mitchell A. Karlan
dated January 8, 2014

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Mitchell A. Karlan
Telephone: (212) 351-3827
Facsimile: (212) 351-5254
mkarlan@gibsondunn.com

December 2, 2013

<u>VIA ELECTRONIC MAIL</u>

Mr. Joseph Gheriafi
ST&P Attorneys and Agents
P.O. Box 14848
Dubai, U.A.E.
uae@stplegal.com

Re:    <u>Breach of Agency Agreement by Global Export Marketing Co. Ltd.</u>

Dear Mr. Gheriafi:

We received your letter dated November 12, 2013. Our client is outraged by the very serious allegations contained in your letter, and it disagrees vehemently with your characterization of the longstanding relationship between Al Maya and Gemco. It appears that we are headed towards expensive litigation, the results of which, we suspect, will not reflect well on your client.

In a final effort to avoid litigation, I ask that you arrange for your client's U.S. counsel to meet with us in New York within the next 14 days, preferably together with Gemco's signatory on the Al Maya-Gemco agreement. If your client does not agree to a meeting, we do not see any way to resolve the dispute between our clients short of litigation.

We assume you are keeping National Trading & Developing Establishment informed of the communications between our clients.

Yours,

Mitchell A. Karlan

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.